Andrew LOTT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3966.

Court of Appeals of Alaska.

June 12, 1992.

---

**16.** We consider it unnecessary to address any of the remaining issues raised in the appeal and cross-appeal.

Andrew Haas, Asst. Public Defender, Bethel, and John B. Salemi, Public Defender, Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Andrew Lott entered pleas of no contest to three charges of assault in the second degree. Superior Court Judge Richard D. Savell sentenced Lott to a total of ten years with one year suspended. Lott thereafter filed a motion to withdraw his no contest pleas, contending that his trial counsel had provided him with ineffective representation. Following an evidentiary hearing, Judge Savell denied Lott's motion, finding that Lott had failed to demonstrate that his counsel acted ineffectively. Lott challenges this ruling on appeal. We affirm.

Lott was indicted in April of 1989 for kidnapping, first-degree assault, and two counts of second-degree assault. The charges stemmed from a series of assaults Lott committed against R.O., a woman with whom he lived in Tuluksak. Lott's case came up for trial in Bethel in July of 1989. From the record, it appears that Lott's counsel initially planned to present a diminished capacity defense based on intoxication. Following jury selection, however, counsel indicated that Lott had decided to accept the state's offer of a plea agreement. Lott entered pleas of no contest to three counts of second-degree assault; in return, the state dismissed the charges of first-degree assault and kidnapping, and agreed not to request consecutive sentencing.

Before Lott entered his no contest pleas, his trial counsel asked for a recess to discuss the plea agreement. During the recess, counsel met with Lott and reviewed a four-page form explaining the nature of the agreement, elements of and applicable sentencing provisions for the offenses to which Lott would be pleading, the meaning of a plea of no contest, and the various procedural and substantive rights that Lott would relinquish by entering such a plea. The form included language indicating that Lott had discussed all of these matters fully with his attorney, understood them, and had no remaining questions. Upon completion of Lott's pre-plea meeting with his attorney, Judge Savell reconvened court. Lott's attorney then reviewed the form with Lott on the record, paragraph by paragraph, eliciting Lott's assurance that he had discussed the issues covered therein fully, understood them, and had no further questions.

When Lott's counsel had completed his inquiry, Judge Savell personally addressed Lott, separately conducting the pre-plea inquiry mandated under Alaska R.Crim.P. 11(c)–(e). Lott participated actively

throughout this entire process, and at no time did he exhibit any doubt, hesitancy, misunderstanding, or confusion concerning his decision to plead no contest.

To provide a factual basis for the no contest pleas, Lott's counsel stipulated to an offer of proof by the state.[1] The state's offer of proof described three separate episodes occurring on the night of March 30 and the morning of March 31, 1989. The first occurred at the home of Lott's parents in Tuluksak. Lott, who had apparently been drinking, became angry with R.O. He struck her with a glass object, which shattered and embedded glass in R.O.'s scalp. Lott continued to attack R.O., kicking her, striking her legs with a fireplace poker, and hitting her in the back with the blunt side of a large axe; this last blow knocked R.O. down and partially incapacitated her.

The second episode of assault occurred later that night. Despite her injuries, R.O. had managed to accompany Lott to his own house. There, Lott began drinking more alcohol and wanted R.O. to drink with him. When R.O., who had a history of alcohol-induced seizures, refused to drink, Lott choked her with a rope and with his hands; he later whipped R.O. with the rope. Lott ultimately succeeded in pouring alcohol down R.O.'s throat. R.O. later escaped the house after Lott fell asleep. She went to a nearby house, and her neighbors took her in to provide her shelter from Lott. Shortly thereafter, R.O. did in fact suffer seizures; she stopped breathing and had to be resuscitated. A health aide took R.O. to the village clinic, where arrangements were made to evacuate her to the hospital in Bethel.

Lott's third assault began at around 9:00 a.m. on March 31. Lott entered the Tuluksak clinic, wakened R.O., and told her to come with him. R.O. was fearful and did not resist; she leaned on his shoulder for support and walked out to Lott's snow machine. The health aide, intimidated by Lott's demeanor and afraid of starting another violent incident, did not interfere. Lott drove R.O. to his house. There, he assaulted her with a variety of objects, including a screwdriver, scissors, and a board. Lott stabbed R.O. with the screwdriver in each leg—one wound penetrating to the bone—and evidently used scissors to probe the wounds. Beating R.O. with a board, Lott broke one of her knuckles, and caused fractures in one of her wrists, a forearm, and an ankle. Lott also tore large quantities of hair from R.O.'s scalp.

This final assault ended at about noon, with the arrival of a trooper who had been summoned to Tuluksak after Lott removed R.O. from the clinic. After approaching Lott's house, knocking, and receiving no response, the trooper heard whimpering. With the help of a village public safety officer, the trooper broke down Lott's door to rescue R.O. He found her inside on the bed in a fetal position, crying and incoherent. Lott sat next to her. There was blood all around the room.

R.O. was evacuated to Bethel, where she was hospitalized. The physician who examined her upon arrival concluded that her wounds were potentially fatal and that she might not have survived had she not been so young.

After finding that the state's offer of proof established a sufficient factual basis, Judge Savell accepted Lott's no contest pleas. On November 7, 1989, Judge Savell sentenced Lott to three concurrent terms of ten years with one year suspended.

Several months later, in March of 1990, Lott filed a *pro se* motion to withdraw his plea. In support of the motion, he submitted an affidavit asserting a number of grounds, including ineffective representation by his trial counsel. The affidavit set forth various conclusory assertions con-

1. Lott's change of plea hearing occurred while the jury that had been selected for his trial was waiting for the trial to begin. At the change of plea hearing, the state asked to supplement its offer of proof by presenting various witnesses who had been subpoenaed for trial and were standing by. Judge Savell agreed to allow the state to perpetuate the testimony of these witnesses, but indicated that they should be presented after Lott's no contest pleas had been entered and after the jury had been excused. The record on appeal does not reflect what witnesses, if any, subsequently testified.

cerning the manner in which his counsel had provided him with deficient representation, including claims that Lott's counsel failed to file a suppression motion challenging the validity of Lott's arrest and the warrantless search of Lott's home, failed to challenge the indictment, failed to have an investigator appointed, failed to otherwise investigate the case, failed to advise Lott adequately concerning his rights and the nature of the proceedings, and failed to pursue a sentence appeal.

Lott later filed two additional affidavits: one, dated March 27, 1990, requested discovery for purposes of the motion to withdraw plea and asserted that Lott, himself, had received no discovery to assist in his preparation for trial; the other, dated April 13, 1990, set out a factual account of the alleged incident in which Lott proclaimed his innocence. According to Lott, R.O. sustained her injuries when Lott became involved in a snowmobile accident on the night of March 30, with R.O. as his passenger.

Judge Savell appointed substitute counsel to represent Lott and ordered an evidentiary hearing on the motion to withdraw. At the evidentiary hearing, Lott's counsel sought to establish the ineffective assistance of counsel claim by calling Lott and his brother, David Lott. Lott's testimony was brief and general. He indicated that he had been arrested in his home, apparently without a warrant, by a trooper and a village public safety officer; according to Lott, the officers contacted and interviewed the victim, who was with Lott in the bedroom when he was arrested, and they searched the residence. The record fails to indicate what the scope of the search was, what evidence was seized, or what significance it might have had.

Lott also testified that he had received a copy of his police report about a month before trial and did not have a chance to listen to the tape of the grand jury proceeding. Lott claimed that his trial counsel did not have an investigator appointed to the case. According to Lott, he asked his trial counsel to come to Tuluksak to interview his mother and his brother, David, who he claimed had been with him during the portions of the night on which his crimes were allegedly committed; Lott wanted David and his mother called as witnesses at trial. Lott's counsel told him he would interview the witnesses by telephone.[2] Lott further claimed that he asked his trial counsel to file a suppression motion and various other motions, the nature of which Lott did not specify; Lott did not believe his counsel had filed any such motions.

Lott testified additionally that he entered his no contest plea because his trial counsel told him to, saying that Lott would receive a fifty-year sentence if he did not. Lott reiterated his belief that trial counsel had never contacted any witnesses; from his testimony, however, it is not certain that he formed this belief until some time after having been sentenced. Lott said that, when he changed his plea, he believed that he would not be allowed to call any witnesses in his own behalf. Finally, Lott complained that his trial counsel provided him with a copy of the presentence report only two days before sentencing, spoke with him about it for only ten minutes, and did not explain that Lott could challenge facts recited therein.[3]

---

**2.** It is unclear from the record whether trial counsel ever actually interviewed these prospective witnesses. At the evidentiary hearing, Lott's counsel asked Lott if his trial counsel ever spoke with his mother or David Lott; Lott responded that his trial counsel said that he never did. Judge Savell struck this testimony, however, when the state objected to it on grounds of hearsay. In subsequent testimony, Lott reiterated his personal belief that his trial counsel never interviewed any witnesses, but he provided no further basis to support this allegation. David Lott, though later called as a witness at the hearing, was never asked if he had spoken with Lott's trial counsel. Neither Lott's mother nor his trial counsel testified or submitted affidavits.

**3.** We note that the presentence report is not in the appellate record; the record provides no indication as to what disputed facts the report contained, what facts Lott could have challenged, how he might have challenged them, or whether they were significant for sentencing purposes.

David Lott also testified briefly in support of Lott's ineffective assistance of counsel claim. When initially asked if he remembered when Lott was arrested for assaulting R.O., David replied, "Yeah, but I wasn't watching. Maybe when I went out that day...." David initially denied having a chance to see Lott and R.O. that night, saying the he had to be with his kids. He then said that he had seen them both that night at his house; both were drinking. David said he did not recall walking with Lott and R.O. to his house; he did remember that he walked with them at some point that night, however, and that R.O. "was behind, and, from there, she ran—I don't know where she went."

David Lott apparently had little other knowledge of the alleged incident, since he was not questioned further. Neither at the evidentiary hearing nor on appeal has Lott's current counsel made any effort to explain how David Lott's vague and cryptic testimony might have been of material benefit to Lott or how trial counsel's failure to interview David might have resulted in actual prejudice to Lott's case. The relevance of the testimony is not apparent from the record currently before this court.

Although Lott initially contemplated calling his trial counsel as a witness in support of the ineffective assistance of counsel claim, he ultimately elected not to. The state also declined to call trial counsel, or any other witnesses, in response. Lott's motion for withdrawal of his plea was thus submitted to Judge Savell based on Lott's testimony, the testimony of his brother, and Lott's three previously submitted *pro se* affidavits. Judge Savell concluded that Lott had failed to meet his burden of establishing ineffective assistance of counsel and had thus failed to establish manifest injustice warranting withdrawal of his plea. Judge Savell stated, in relevant part:

> Is there a showing of ineffective assistance of counsel? The case law, whether in a Rule 35.1 setting, Rule 11 setting, or a straight appeal, is clear that there is a presumption of competence, a presumption that decisions were made for sound, tactical reasons, as a matter of trial strategy. Absent those situations where clear error, malpractice, or ineffective lawyering is present—clear in the sense that it doesn't take a witness to identify it. Absent those situations, a defendant must present an affidavit of counsel in order to [make a] threshold showing of ineffective assistance. An affidavit saying what was wrong.... There is no such showing in this case. There are references in the record for a greater need for investigation; ... there are references to allegedly illegal searches that should have been explored or addressed. But, there is no showing factually supporting the basis for these sometimes vague complaints. Or, that they meet the requirements necessary to show manifest injustice and to permit a withdrawal of the plea.

■ On appeal, Lott takes issue with Judge Savell's finding. Lott argues that the judge was mistaken in concluding that he should have presented an affidavit or testimony from his trial counsel. Lott claims that he presented uncontroverted evidence establishing that his trial attorney's conduct was deficient. In Lott's view, it should be obvious that the actions of his trial counsel were not based on any tactical decisions. Lott argues that he thus met his burden of proving ineffective assistance.

Lott acknowledges cases decided by this court holding that a person claiming ineffective assistance of counsel must normally present an affidavit or testimony from the allegedly ineffective attorney, in order to establish the reasons for the attorney's actions and to rule out the possibility that the conduct was based on sound tactical choice. *See, e.g., State v. Jones,* 759 P.2d 558, 569 (Alaska App.1988); *Barry v. State,* 675 P.2d 1292 (Alaska App.1984). Lott insists, however, that these cases deal exclusively with procedural requirements for post-conviction relief actions filed under Alaska R.Crim.P. 35.1 and are inapplicable to ineffective assistance of counsel claims raised under Criminal Rule 11, which governs motions to withdraw pleas. Lott points out that Rule 11 does not specify any particular procedure for proving a claim of inef-

fective assistance of counsel. Lott goes on to argue that Judge Savell should at least have given Lott advance notice of his intent to follow the procedures specified in Criminal Rule 35.1, so that Lott could have supplied the court with an affidavit or testimony from his trial counsel.

Lott's argument is unpersuasive. Alaska R.Crim.P. 11(h)(1) allows a defendant to withdraw a plea of guilty or no contest "whenever the defendant, upon a timely motion ..., proves that withdrawal is necessary to correct manifest injustice." Under subparagraph (ii)(aa) of the rule, manifest injustice is established upon proof that "[t]he defendant was denied the effective assistance of counsel." As we said in *Smith v. State,* 717 P.2d 402, 404 (Alaska App.1986), this provision makes it "clear that a showing of ineffective assistance of counsel will entitle the defendant to withdraw his plea, without further inquiry into the issue of manifest injustice." In all cases involving motions to withdraw pleas of guilty or no contest, however, the defendant bears the burden of proving that withdrawal is warranted. *See, e.g., Morgan v. State,* 582 P.2d 1017 (Alaska 1978); *McClain v. State,* 742 P.2d 269 (Alaska App.1987). Hence, a defendant claiming manifest injustice for withdrawal of a plea under Rule 11(h)(1)(ii)(aa) bears the burden of proving ineffective assistance of counsel.

In *Risher v. State,* 523 P.2d 421, 424–25 (Alaska 1974), the Alaska Supreme Court, construing the Alaska Constitution, adopted a twofold standard for ineffective assistance of counsel. Under the *Risher* test the defendant is required to prove, first, that trial counsel's performance fell below the minimal level of competency—that counsel failed to perform at least as well as a lawyer with ordinary training and skill in criminal law; second, the defendant is required to show prejudice by creating a reasonable doubt that counsel's incompetence contributed to the outcome.

The *Risher* standard mirrors the standard for ineffective assistance of counsel adopted by the United States Supreme Court under the federal constitution, except, as to the prejudice requirement, the federal standard requires the defendant to do more than raise a reasonable doubt; instead, the defendant must prove a reasonable probability of prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

This court elaborated on the *Risher* and *Strickland* tests in *State v. Jones,* 759 P.2d at 567–70. We said, in relevant part:

An informed decision on the issue of competence can be made only with full knowledge of the reasoning and information upon which counsel chose to act. In evaluating trial counsel's conduct, the court must apply a strong presumption of competence. *Strickland,* 466 U.S. at 689 [104 S.Ct. at 2065]. *See also Cronic [United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)], 466 U.S. at 658 [104 S.Ct. at 2046]. An integral component of the presumption of competence is the further presumption that trial counsel's actions were motivated by sound tactical considerations. The duty of rebutting this presumption is part and parcel of the accused's burden of proof: "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 [104 S.Ct. at 2065] (citation omitted). In the absence of evidence ruling out the possibility of a tactical reason to explain counsel's conduct, the presumption of competence remains unrebutted and operates to preclude a finding of ineffective assistance.

. . . .

In this connection, if it appears that counsel's actions were undertaken for tactical or strategic reasons, they will be virtually immune from subsequent challenge, even if, in hindsight, the tactic or strategy appears to have been mistaken or unproductive.... [W]hen a tactical choice has in fact been made, even if it was made by an attorney who was not fully informed as to available options, the choice will be subject to challenge only if the tactic itself is shown to be unreasonable—that is, a tactic that no

reasonably competent attorney would have adopted under the circumstances. *Id.* at 569–70.

Lott mistakenly reasons that our holding in *Jones* is inapplicable to his case, because *Jones* was a post-conviction relief action filed under Criminal Rule 35.1, rather than a motion to withdraw a plea filed under Rule 11. Although *Jones* did extensively discuss the procedural requirements for establishing post-conviction claims under Criminal Rule 35.1, *see Jones*, 759 P.2d at 565–67, the decision gave separate consideration to the substantive requirements for proving an ineffective assistance of counsel claim under the *Risher* test, regardless of the procedural context in which the claim is raised. *Id.* at 570–72. The passages from *Jones* that we have quoted above are from the portion of our opinion addressing substantive issues common to all claims of ineffective assistance of counsel arising in criminal cases, not from the portion discussing procedural issues unique to claims raised under Criminal Rule 35.1.[4]

4. Indeed, the quoted passages from *Jones* occurred in a portion of the opinion that was specifically headed "SUBSTANTIVE ISSUES," *State v. Jones*, 759 P.2d 558, 567 (Alaska App. 1988); the preceding portion of the opinion was specifically headed "PROCEDURAL ISSUES." *Id.* at 565.

5. Lott's claim that Judge Savell erred procedurally is mistaken in two other respects. Initially, Lott suggests that, because his evidence on the issue of ineffective assistance of counsel was uncontradicted, the trial court was in effect bound to accept it. It is true that, for purposes of determining whether a claim of ineffective assistance of counsel may be rejected summarily, without affording the defendant an opportunity for an evidentiary hearing, the court must provisionally accept as true any facts asserted by the defendant. *See, e.g., Jones*, 759 P.2d at 565–66 (discussing motions for judgment on the pleadings and for summary judgment in cases filed under Criminal Rule 35.1). By contrast, in the present case, Judge Savell granted Lott a full evidentiary hearing on his claim. Having conducted a full hearing, Judge Savell was no longer bound to accept Lott's assertions as provisionally true; rather, at this stage, the judge was required to undertake a full and final resolution of the factual and legal issues presented. In performing this task, Judge Savell was responsible for deciding issues of credibility. For this reason, if the judge found Lott's testimony in-

In ruling on Lott's motion to withdraw, Judge Savell correctly recognized that the principles discussed in these passages apply in any case in which the defendant bears the burden of proving ineffective assistance under the *Risher* test, regardless of whether the case involves a Rule 11 motion to withdraw a plea, a Rule 35.1 application for post-conviction relief, or a direct appeal. Since Lott's claim of manifest injustice under Rule 11 was predicated on his allegation of ineffective assistance of counsel—an allegation that he was required to prove—these principles applied to his case.[5]

Applying these principles, we think it apparent that the vague and conclusory allegations of incompetence contained in the affidavits Lott filed in support of his motion, coupled with the sketchy and abbreviated testimony he presented at the evidentiary hearing, fall far short of providing the type of evidentiary context necessary to overcome the strong presumptions that his trial counsel performed com-

credible or unpersuasive, he was authorized to reject it, even if it was uncontroverted by other evidence.

Lott also suggests that Judge Savell could not properly dismiss Lott's case without prior notice of his intent to do so and without affording Lott the opportunity to present additional evidence. This claim, however, hinges on Lott's mistaken assumption that Judge Savell held Lott to procedural standards specified in Criminal Rule 35.1. Lott apparently relies in this regard on Criminal Rule 35.1(f)(2), empowering the court to dismiss a facially insufficient post-conviction relief action *sua sponte*, provided that the applicant is given advance notice of the court's intent to dismiss and an opportunity to correct the defects in the application. *See, e.g., Hampton v. Huston*, 653 P.2d 1058 (Alaska App.1982). Our holding that the principles of *Jones* applied in Lott's case were substantive principles relating to all ineffective assistance of counsel claims, rather than procedural principles unique to post-conviction relief actions, largely disposes of this argument. However, we note that even if the trial court had held Lott to the procedural requirements of Rule 35.1 in this case, advance notice of dismissal would not have been required under Rule 35.1(f)(2). Here, the court did not dismiss Lott's motion *sua sponte*, based on a deficiency in Lott's pleadings. Instead, the court denied Lott's motion on its merits after affording him a full opportunity to present evidence to establish his claim.

petently and that his actions were motivated by sound tactical considerations. Lott's complaints against his trial counsel do not involve conduct so plainly and unmistakably incompetent as to be *per se* ineffective; yet Lott has failed to present any evidence whatsoever to provide insight into the specific circumstances under which his counsel acted or the underlying motivations for his conduct. To find ineffective assistance of counsel on this evidentiary record would require a presumption of incompetence rather than a presumption of competence. We find no error in Judge Savell's decision that Lott failed to meet his burden of proving ineffective assistance of counsel, and that he consequently failed to establish manifest injustice warranting withdrawal of his pleas.

The order denying Lott's motion to withdraw his pleas is AFFIRMED.