Dzevid LIMANI, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4684.

Court of Appeals of Alaska.

Sept. 16, 1994.

Rehearing Denied Oct. 3, 1994.

Rex Lamont Butler, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

BRYNER, Chief Judge.

In 1990, Dzevid Limani, a Yugoslavian citizen, was charged with one count of misconduct involving a controlled substance in the third degree for selling cocaine to an undercover officer in Anchorage. Limani entered into an agreement with the state that called for him to plead no contest to the charge; in return, Limani was to receive a suspended imposition of sentence conditioned on his completion of thirty-six months of probation and his performance of eighty-five hours of community work. The agreement was reduced to writing.

In September of 1990, Limani appeared before Acting Superior Court Judge David Stewart to change his plea in accordance with the plea bargain. After reviewing the

plea agreement, Judge Stewart indicated that he would follow it, and Limani entered a no contest plea. Judge Stewart accepted the plea after personally addressing Limani in accordance with the requirements of Alaska Criminal Rule 11.

After the court had accepted Limani's no contest plea, Limani's counsel for the first time mentioned that a conviction might expose Limani to deportation; to forestall this possibility, Limani's counsel requested Judge Stewart to recommend against deportation. Judge Stewart granted the request:

> [DEFENSE COUNSEL]: Your Honor, there is one aspect which Mr. Limani (indiscernible) to address. It is my understanding that he is currently in the country pending citizenship, and this is his first significant contact other than a couple traffic aspects here in the United States. And it would—immigration would find it favorable or taken into consideration if you believe it would not—his conduct is not one that would be egregious enough to have him exported for, and therefore, we're asking that in—for you to find, in your opinion, on the basis of what you understand about the case that he should not be extradited or deported back to Yugoslavia.

> THE COURT: Well, if he complies with his probationary conditions and continues to maintain his conduct pursuant to that I don't see that it's necessary to have him deported.

Judge Stewart sentenced Limani in accordance with the terms of the plea agreement in all other respects.

Two years later, in February 1992, a federal immigration judge ordered Limani deported due to his conviction. Limani then moved to withdraw his no contest plea, claiming, first, that the plea was involuntary because

Judge Stewart had failed to inform him that a no contest plea would result in his deportation and, second, that he had been denied one of the promised concessions of the plea agreement—that he would not be deported if he successfully completed his probationary term. Limani's motion to withdraw his plea was assigned to Superior Court Judge Rene J. Gonzalez (Judge Stewart having resigned from the bench in the interim). Judge Gonzalez denied the motion. Limani appeals.

Limani's first contention is that his no contest plea was involuntary because Judge Stewart failed to inform Limani that the plea would result in deportation. Limani acknowledges that this precise issue has already been addressed in *Tafoya v. State*, 500 P.2d 247, 250 (Alaska 1972), which holds that the voluntariness of a plea is not vitiated by the court's failure to apprise the defendant of a collateral consequence of conviction such as the possibility of deportation. Limani nevertheless claims that *Tafoya* is no longer good law. He argues that, under current federal law, 8 U.S.C. § 1251,[1] deportation of a foreign national upon conviction of a drug offense is no longer discretionary but is instead mandatory. Limani maintains that, for this reason, deportation is not a collateral consequence of a conviction but is rather a direct consequence—a consequence that should therefore have been explained to him before his plea of no contest was accepted.

■ Limani is wrong on three grounds. First, although Judge Stewart did not affirmatively advise Limani of the possibility of deportation before accepting his plea, the record unmistakably establishes Limani's awareness of the possibility: his own attorney broached the issue by requesting and obtaining a recommendation against deportation. Under the circumstances, the court's failure to affirmatively advise Limani that

---

1. 8 U.S.C.A. § 1251 (West Supp.1994) provides, in relevant part:

    **(a) Classes of deportable aliens**
    Any alien (including an alien crewman) in the United States shall, upon order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:

    . . . .
    **(2) Criminal offenses**
    . . . .

    **(B) Controlled substances**
    **(i) Conviction**
    Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

deportation was a possible consequence of his conviction plainly had no actual effect on the voluntariness of Limani's plea.

 Second, Limani's argument equates a "collateral consequence" of conviction with a result that is merely possible, and a "direct result" with one that is inevitable. It appears, however, that the distinction between a direct and collateral consequence of a conviction does not turn on whether the consequence is inevitable or a mere possibility. Rather, a collateral consequence is one originating outside of the trial court. *Fruchtman v. Kenton,* 531 F.2d 946, 949 (9th Cir.1976) (citing *Michel v. United States,* 507 F.2d 461, 465 (2d Cir.1974). Federal courts addressing the issue since enactment of current 8 U.S.C. § 1251 have thus continued to characterize deportation as a collateral, not direct, consequence of a criminal conviction. *See, e.g., United States v. Banda,* 1 F.3d 354, 356 (5th Cir.1993); *Varela v. Kaiser,* 976 F.2d 1357, 1358 (10th Cir.1992); *United States v. Del Rosario,* 902 F.2d 55, 58–59 (D.C.Cir.1990).

 Third, Limani is in any event wrong in his assertion that deportation is now an automatic consequence of any drug conviction. The federal courts have uniformly declined to interpret 8 U.S.C. § 1251 as mandatory and have instead held that the statute leaves deportation to the discretion of the United States Attorney General. *Downs–Morgan v. United States,* 765 F.2d 1534, 1538 (11th Cir.1985); *United States v. Nagaro–Garbin,* 653 F.Supp. 586, 590–91 (E.D.Mich.1987), *aff'd,* 831 F.2d 296 (6th Cir. 1987).

 Limani separately argues that, as an implicit part of the plea agreement, he was in effect promised immunity from deportation. According to Limani, under the terms of the plea agreement, his suspended imposition of sentence should have resulted in a "total lack of any conviction of record and that such lack of a criminal conviction eliminated the need for deportation."

The sentencing record flatly contradicts this contention. The written plea agreement that led to Limani's conviction makes no promise against deportation and fails even to mention the possibility of the recommenda-

tion that Limani eventually requested and received. Neither the transcript of the change of plea hearing nor the trial court's written order suspending the imposition of Limani's sentence contains any suggestion that immigration concessions were contemplated by the plea agreement. Indeed, Limani's counsel's after-the-fact request for a recommendation against deportation stands as convincing evidence that the original plea agreement included no terms relating to deportation.

In summary, neither the trial court's failure to advise Limani of the consequences of deportation nor Limani's claim of a broken promise against deportation amounted to a ground for plea withdrawal in this case. The trial court's order denying Limani's motion to withdraw his plea is AFFIRMED.

**J.C.W., Appellant,**