**William PETERSON, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6889.

Court of Appeals of Alaska.

July 23, 1999.

Rehearing Denied Aug. 13, 1999.

Hearing Denied Nov. 8, 1999.

---

**16.** *PSEA,* 895 P.2d at 986.

Robert John, Fairbanks, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## O P I N I O N

MANNHEIMER, Judge.

Alaska Criminal Rule 11(c)(4) declares that, when a defendant offers to plead guilty or no contest to a sex offense listed in AS 12.63.100, a judge must not accept the plea until the judge has informed the defendant, personally and in writing, of the requirements of Alaska's sex offender registration act, AS 12.63.010–100. This case involves a defendant who pleaded no contest to a sex offense and was convicted and sentenced based on that plea. In violation of Criminal Rule 11(c)(4), the judge who accepted the defendant's plea did not warn the defendant about sex offender registration. The question is whether the defendant can now withdraw his plea because of this violation of Rule 11.

We conclude that if the defendant was not otherwise aware of the sex offender registration requirement, and if the defendant would not have entered his plea had he known of this requirement, then the defendant is entitled to withdraw his plea. Because these issues of fact remain undecided in Peterson's case, we remand this case to the superior

court so that the court can investigate the circumstances surrounding Peterson's decision to enter his plea.

### Synopsis of the Proceedings

In July 1994, William Peterson, Jr. was indicted for first-degree sexual assault for engaging in unconsented-to sexual penetration with a woman in Mountain Village. Following plea negotiations, the State reduced the charge to second-degree sexual assault.[1] In October, Superior Court Judge Dale O. Curda accepted Peterson's plea of no contest to this reduced charge. Peterson was later sentenced to 6 years' imprisonment with 4 years suspended (2 years to serve).

In August 1996, Peterson filed a motion to withdraw his plea. He relied on four claims of error. First, Peterson asserted that Judge Curda, when he accepted Peterson's plea, violated Criminal Rule 11(c)(4) by failing to warn Peterson about his duty to register as a sex offender upon his release from prison. Second, Peterson asserted that he was denied his right of allocution at sentencing. Third, Peterson asserted that he had not understood the elements of the offense. And fourth, Peterson claimed that he received ineffective assistance of counsel.

The superior court denied Peterson's application, based on the pleadings. Peterson now appeals.

### Preliminary Issues

Before reaching the issue of the superior court's failure to warn Peterson about sex offender registration, we briefly address Peterson's other claims.

■ Peterson alleges that he was denied his right of allocution at sentencing. The record shows that this claim is meritless.

At sentencing, after the prosecutor and the defense attorney finished their arguments, Judge Curda asked Peterson if he wished to speak. The following exchange ensued:

*Peterson:* (Inaudible)

*The Court:* Is there anything you would like to relay to [your attorney] that (indiscernible)?

*Peterson:* (Indiscernible)

[Whispered conversation between Peterson and his attorney.]

*Defense Attorney:* As Your Honor understands, it's very difficult for individuals to speak in court. But Mr. Peterson has asked me to relay to the court ... the effect that having gone through this case has had on him. I mean, his commitment, his commitment to not get into any trouble ..., and the amount that he's learned from this case. That he wants to express that, he's just finding it, you know, very, but he wanted me to say that for him.

*The Court:* Okay.

*Defense Attorney:* [And] that he's very sincere about that, that the court will not—will never see him again.

*The Court:* Okay. Thank you.

Thus, the record demonstrates that Peterson was offered the opportunity to speak and that he exercised that opportunity, choosing to have his lawyer act as his spokesman.

As part of his claim of ineffective assistance of counsel, Peterson alleges that, during the whispered conversation, his attorney actually told him that "it was not a good time to argue and tell his side." However, Peterson never presented an affidavit from his trial attorney addressing this claim. The superior court could therefore disregard Peterson's assertion.[2]

The existing record shows that Peterson's attorney addressed the court at Peterson's request, articulating Peterson's thoughts about his experience in the criminal justice system and his resolve to be rehabilitated. Peterson made no comments at the sentencing hearing to contradict his attorney or to suggest that he did not endorse this method of allocution.

Peterson's next claim is that, when he pleaded no contest to second-degree sexual assault, he did not understand the elements of the crime. Again, the record belies Peter-

---

**1.** AS 11.41.420(a)(3)(B).

**2.** *See Steffensen v. State,* 837 P.2d 1123, 1126–27 (Alaska App. 1992).

son's claim. At the change-of-plea hearing, Judge Curda spoke directly to Peterson and explained the charge:

> *The Court:* The reduced charge here, ... Mr. Peterson, alleges that on or about the 19th day of July, 1994, at or near Mountain Village, ... you did knowingly engage in sexual [penetration] with another person, E.Q., who [you] knew was incapacitated.... Do you understand that reduced charge, Mr. Peterson?
>
> *Peterson:* Yes, I do.

■ On appeal, Peterson argues that later events should have alerted Judge Curda to the need to question Peterson again about the elements of the charge. Specifically, Peterson points out that, in his statement to the pre-sentence investigator, Peterson expressly contended that he was innocent and had done nothing wrong. Peterson argues that, because he protested his factual innocence to the pre-sentence investigator, it should have been obvious that he did not understand the nature of the charge to which he had pleaded no contest.

■ This does not follow. Under Alaska law, a defendant has the right to plead no contest to a criminal charge even though the defendant simultaneously maintains his factual innocence.[3] Peterson was indicted for first-degree sexual assault, an unclassified felony. Even if he believed himself totally innocent of wrongdoing, it would not be inconsistent for Peterson to conclude that his interests would be furthered if he pleaded no contest to a lesser charge.

In *Walsh v. State*[4], this court decided that a trial judge should not have accepted a guilty plea from a defendant who maintained his innocence. But the defendant in *Walsh* entered the plea at arraignment, without the assistance of counsel; moreover, in his allocution (immediately following his plea), the defendant offered an explanation of events which, if true, would not have supported his conviction.[5] Peterson, on the other hand, was represented by experienced counsel and his plea was the result of a negotiated bargain in which the State reduced the charge.

To lawfully accept Peterson's plea, Judge Curda did not have to find that Peterson acknowledged his factual guilt of the charge. Judge Curda only had to find that Peterson understood the charge and had voluntarily agreed not to contest it. Though Peterson later declared his factual innocence to the pre-sentence investigator, this occurrence did not require Judge Curda to re-examine or re-determine Peterson's understanding of the charge.

■ Peterson's third claim is that he received ineffective assistance of counsel from his trial attorney. Peterson alleges that he had only limited contact with his attorney, that his attorney failed to provide him with copies of legal materials that Peterson requested, that his attorney failed to contact witnesses who would have been favorable to the defense, and that, in general, the attorney gave Peterson bad legal advice.

We have repeatedly held that a defendant asserting ineffective assistance of counsel must provide the court with an affidavit from the former attorney, addressing the various claims of ineffective representation, or must explain why such an affidavit can not be obtained.[6] Peterson never submitted an affidavit from his trial attorney, nor did he explain why such an affidavit was unobtainable.

■ On appeal, Peterson's new attorney asserts that he did not seek an affidavit from Peterson's trial attorney because he thought that, under Criminal Rule 35.1, he would be able to obtain the trial attorney's affidavit or testimony during the discovery process. Judge Curda could justifiably reject this assertion. We have repeatedly stated that the trial attorney's affidavit is an essential component of the defendant's *prima facie* case—that without the affidavit (or an explanation of why the affidavit can not be obtained), the

**3.** *See Miller v. State,* 617 P.2d 516, 518–19 (Alaska 1980).

**4.** 758 P.2d 124 (Alaska App.1988).

**5.** *See id.* at 127.

**6.** *See, e.g., Steffensen,* 837 P.2d at 1126–27; *State v. Jones,* 759 P.2d 558, 570 (Alaska App.1988).

defendant's pleading is subject to summary dismissal.[7]

Peterson's new attorney also appears to argue that he failed to obtain the trial attorney's affidavit because he was uncertain whether Peterson's plea-withdrawal request would ultimately be categorized as a "motion" under Criminal Rule 11(h) or a "petition for post-conviction relief" under Criminal Rule 35.1. Judge Curda could justifiably conclude that this explanation, too, was unconvincing. In *Lott v. State*[8], we expressly held that an affidavit from the former attorney is always required when a defendant seeks to withdraw a plea based on allegations of ineffective representation, regardless of whether plea withdrawal is pursued under Criminal Rule 11(h) or Criminal Rule 35.1.[9]

In his reply brief, Peterson's new attorney contends for the first time that he did not have sufficient time to obtain an affidavit from the trial attorney. This contention is waived for two reasons. First, Peterson did not present this assertion to the superior court.[10] Second, this assertion is presented for the first time in Peterson's reply brief.[11]

Finally, Peterson contends that his trial attorney's deficiencies are so apparent that no reasonable explanation for them could possibly be offered, and thus no attorney affidavit is required. This contention is frivolous. Peterson's allegations of ineffective assistance of counsel rest on assertions about off-record conversations and assertions about the attorney's trial preparation and tactical decisions—actions and inactions that occurred outside of the courtroom. Peterson was obliged to confront his trial attorney

with these assertions and provide the superior court with his trial attorney's explanations.[12]

For these reasons, we uphold the superior court's decision to summarily dismiss three of Peterson's claims—the alleged denial of allocution, the alleged failure to ascertain that Peterson understood the charge, and the alleged ineffectiveness of Peterson's trial attorney. We now turn to Peterson's remaining claim—that he should be allowed to withdraw his plea because the court failed to warn him about sex offender registration.

### The Violation of Criminal Rule 11(c)(4)

Peterson pleaded no contest to second-degree sexual assault[13], one of the offenses listed in AS 12.63.100.[14] When Judge Curda accepted Peterson's plea to this offense, he failed to inform Peterson of the requirements of the sex offender registration act.[15] Approximately two years later (in August 1996), Peterson moved to withdraw his plea based on the judge's failure to tell Peterson about his duty to register as a sex offender.

Judge Curda denied Peterson's request. The judge conceded that he had violated Rule 11(c)(4) by failing to warn Peterson that he would be required to register as a sex offender following his release from prison, but the judge concluded that this error was harmless.

In deciding that the error was harmless, Judge Curda pointed to the fact that Peterson had initially been charged with first-degree sexual assault, an unclassified felony; thus, Peterson had obtained a substantial

---

**7.** *See Steffensen,* 837 P.2d at 1126–27; *Jones,* 759 P.2d at 570.

**8.** 836 P.2d 371 (Alaska App.1992).

**9.** *See id.* at 375–77.

**10.** *See Groff v. Kohler,* 922 P.2d 870, 875 (Alaska 1996) (arguments not raised below cannot be pursued on appeal).

**11.** *See Petersen v. Mutual Life Ins. Co.,* 803 P.2d 406, 411 (Alaska 1990) (issues raised for the first time in a reply brief are waived).

**12.** *See Steffensen,* 837 P.2d at 1126–27.

**13.** AS 11.41.420(a)(3)(B).

**14.** *See* AS 12.63.100(5)(A).

**15.** This omission does not necessarily indicate Judge Curda's lack of diligence or attention to the rules. Section (c)(4) of Criminal Rule 11 was added by the Alaska Legislature in 1994. *See* SLA 1994, ch. 41, § 10. However, the Alaska Supreme Court did not repromulgate Rule 11 to incorporate the legislated change until eleven months later. *See* Supreme Court Order No. 1204 (effective July 15, 1995). Thus, for almost a year, the published rule books contained an inaccurate version of Rule 11(c)—a version that omitted section (c)(4).

benefit from the negotiated plea—the reduction of the charge to second-degree sexual assault, a class B felony. In addition, because Peterson had waited so long before asking to withdraw his plea, Judge Curda questioned whether Peterson was acting in good faith. Finally, Judge Curda relied on the fact that, other than failing to warn Peterson of his duty to register as a sex offender, the judge had complied with all the other provisions of Criminal Rule 11(c).

In this appeal, Peterson argues that Judge Curda's failure to warn him about sex offender registration was not harmless. Peterson asserts that he did not know about the registration requirement when he entered his plea, and he also asserts that he would not have pleaded no contest if he had known about the registration requirement. Peterson further asserts that a court violates a defendant's right to due process if the court accepts a guilty plea to a sex offense when the defendant is ignorant of the registration requirement. That is, Peterson contends that such a plea is not "knowing" and "voluntary" for purposes of the due process clause.

The State, in response, relies on case law holding that the due process clause requires only that a defendant be advised of the "direct" consequences of a plea, and that a defendant's ignorance of collateral consequences does not affect the validity of the plea.[16] The State contends that, under the case law distinguishing "direct" consequences from "collateral" consequences, sex offender registration is not a component of a defendant's sentence but is rather a "collateral" consequence of the plea.

We resolve this issue in another opinion being issued today: *Patterson v. State*, 985 P.2d 1007 (Alaska App.1999). In *Patterson*, we hold that sex offender registration is not part of a defendant's sentence but is, instead, a civil regulatory measure that attaches certain collateral consequences to a conviction for a sex offense. These consequences remain "collateral" for due process purposes even though they inevitably attend a conviction for any offense listed in AS 12.63.100. As we said in *Limani v. State* [17],

> [T]he distinction between a direct and collateral consequence of a conviction does not turn on whether the consequence is inevitable or a mere possibility. Rather, a collateral consequence is one originating outside of the trial court.

■ A guilty plea is "knowing" and "voluntary" for due process purposes if "the record, taken as a whole, ... show[s] [the defendant's] understanding of the nature of the offense charged and [the] voluntar[iness] [of the] plea." [18] A plea meets the standards of due process even though the defendant is not "informed about every conceivable collateral effect the conviction might have".[19] A plea remains constitutionally valid even though the court may fail to comply with one or more provisions of Criminal Rule 11(c).[20] We therefore agree with the State that Peterson's plea was "knowing" and "voluntary" for due process purposes even if Peterson did not know about the registration requirement when he entered his plea.

This does not end the matter, however. Even though we conclude that sex offender registration is a "collateral" consequence of Peterson's plea, the fact remains that the legislature expressly amended Criminal Rule 11(c) to make sure that defendants are warned about their duty to register as sex offenders before they plead guilty or no contest to a sex crime.[21] Our constitution guarantees many procedural protections to criminal defendants, but the legislature may enact other procedural protections to supplement the ones found in the constitution. Our duty

**16.** See, for example, *Limani v. State*, 880 P.2d 1065 (Alaska App.1994).

**17.** *Id.* at 1067 (citations omitted).

**18.** *Barrett v. State*, 544 P.2d 830, 832 (Alaska 1975).

**19.** *Tafoya v. State*, 500 P.2d 247, 250 (Alaska 1972).

**20.** *See Barrett*, 544 P.2d at 833–34; *see also Lewis v. State*, 565 P.2d 846, 851–52 (Alaska 1977) (holding that violations of Criminal Rule 11(c) are not errors of "constitutional dimension").

**21.** *See* SLA 1994, ch. 41, § 10.

is to enforce all of a defendant's procedural rights, including the statutory ones. We must therefore decide whether the violation of Rule 11(c)(4) entitles Peterson to withdraw his plea.

■ Before we address that question, we must answer a procedural objection raised by the State. The State contends that the legislature has expressly barred defendants from attacking their pleas based on a trial judge's failure to warn the defendant about sex offender registration if the defendant does not raise this defect until after sentencing.

The State's argument is based on legislative changes to the law governing withdrawals of pleas and post-conviction relief. In 1995, the legislature enacted AS 12.72, the series of statutes governing petitions for post-conviction relief.[22] At the same time, the legislature amended Criminal Rule 11(h), the rule governing withdrawal of pleas.[23]

As amended, Criminal Rule 11(h)(3) declares that a defendant wishing to withdraw a guilty plea after sentencing must file a petition for post-conviction relief under AS 12.72. And within AS 12.72, the pertinent statute—AS 12.72.010(8)—declares that a defendant seeking to withdraw a guilty plea after sentencing must show that the withdrawal is required "in order to correct manifest injustice under the Alaska Rules of Criminal Procedure".

The State points out that Criminal Rule 11(h)(4) contains a list of circumstances that constitute "manifest injustice".[24] Among the circumstances listed in Rule 11(h)(4), the only arguably pertinent provision is section (h)(4)(C), which declares that manifest injus-

tice exists when a defendant's plea "was involuntary ... or was entered without knowledge ... that the sentence actually imposed could be imposed". We have already ruled that Peterson's plea was "voluntary" within the meaning of the due process clause and that sex offender registration was not part of Peterson's sentence. The State therefore argues that Peterson has no legal avenue for attacking his plea.

In essence, the State argues that the circumstances listed in Rule 11(h)(4) are the sole circumstances that can constitute "manifest injustice". We reject this contention because it is inconsistent with the legislative history of the rule.

Alaska's Criminal Rule 11(h) was enacted in 1973 by Supreme Court Order No. 157. The rule was drawn from the 1968 version of Standard 2.1 of the American Bar Association's *Standards Relating to Pleas of Guilty* (Approved Draft, 1968). Like Alaska's Rule 11(h), the 1968 version of ABA Standard 2.1 stated that "[a] court should allow [a] defendant to withdraw [a] plea of guilty or nolo contendere whenever the defendant ... proves that withdrawal is necessary to correct a manifest injustice."[25] And, like Alaska's Rule 11(h), ABA Standard 2.1(a) contained a list of situations that constituted "manifest injustice":

(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:

(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

22. *See* SLA 1995, ch. 79, § 9.

23. *See* SLA 1995, ch. 79, § 27.

24. Criminal Rule 11(h)(4) states:

Withdrawal [of a plea] is necessary to correct a manifest injustice whenever it is demonstrated that:

(A) The defendant was denied the effective assistance of counsel guaranteed by constitution, statute or rule, or

(B) The plea was not entered or ratified by the defendant or a person authorized to act in the defendant's behalf, or

(C) The plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed, or

(D) The defendant did not receive the charge or sentence concessions contemplated by the plea agreement, and

(i) the prosecuting attorney failed to seek or opposed the concessions promised in the plea agreement, or

(ii) after being advised that the court no longer concurred [in the plea agreement] and after being called upon to affirm or withdraw the plea, the defendant did not affirm the plea.

25. *Standards Relating to Pleas of Guilty* (Approved Draft, 1968), page 52.

(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.

*Standards Relating to Pleas of Guilty* (Approved Draft, 1968), page 53. With a few editorial changes (primarily, to make the language gender-neutral and to eliminate the ABA's stumbling phrase, "failed ... not to oppose" from the fourth clause), the language of ABA Standard 2.1 survives intact in Alaska's current Criminal Rule 11(h)(4).

The ABA drafters did not view the four clauses of section 2.1(a)(ii) as defining the limits of "manifest injustice". Rather, they viewed the four clauses as prime examples of "manifest injustice", but they believed that other circumstances might also present "manifest injustice", thus requiring withdrawal of the defendant's plea.

The 1968 ABA commentary to Standard 2.1(a)(ii) describes the four clauses this way: "This section identifies four factual situations which the Advisory Committee believes *independently* establish manifest injustice when proved by the defendant." [26] As used in this commentary, the word "independently" appears to be the equivalent of "per se"; in other words, these four listed situations will be deemed "manifest injustice" regardless of what the other circumstances may be. This, in turn, implies that if the other circumstances surrounding the plea are egregious enough, they may constitute "manifest injustice" even though the defendant fails to prove any of the four listed situations.

This implication was made explicit in the ABA's 1979 revision of Standard 2.1, now redesignated as Standard 14–2.1 of the ABA's *Standards for Criminal Justice*. In the 1979 version of the standard, the ABA amended the language preceding the list of circumstances constituting "manifest injustice". This new prefatory language declares:

[(b)](ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves, *for example*, that ...

*Standards for Criminal Justice* (2nd ed., 1980), page 1450 (emphasis added). The ABA's accompanying commentary states that the phrase "for example" was added to the standard "in order to make clear that there may be other situations when withdrawal of a plea may be necessary to correct 'manifest injustice'." [27]

■ Based on this history of the ABA standard from which Alaska Criminal Rule 11(h)(4) was drawn, we conclude that the four clauses of Rule 11(h)(4) are not intended to define the outer limits of "manifest injustice". Other circumstances may constitute manifest injustice and thus call for withdrawal of a defendant's plea. We therefore reject the State's contention that Peterson is barred from seeking relief because his claim does not match any of the circumstances specifically listed in the rule.

We now reach the final issue: Does the superior court's violation of Criminal Rule 11(c)(4) amount to manifest injustice?

Peterson is the moving party, and (as discussed above) a violation of Rule 11(c)(4) is not a constitutional error.[28] Peterson thus bears the ultimate the burden of proving that the superior court's violation of Rule 11(c)(4) resulted in manifest injustice to him.[29] The Alaska Supreme Court's decisions in this area suggest that "manifest injustice" exists only when a violation of Rule 11(c) "affect[s]

**26.** *Id.* at page 55 (commentary to Section 2.1(a)(ii)) (emphasis added).

**27.** *Standards for Criminal Justice* (2nd ed., 1980), page 1451.

**28.** *See Lewis,* 565 P.2d at 851–52.

**29.** This is the general rule: a defendant who seeks to withdraw a plea based on a violation of Rule 11(c) must prove not only the violation but also that the violation resulted in actual prejudice to the defendant. *See, e.g., Morgan v. State,* 582 P.2d 1017, 1025–26 (Alaska 1978).

substantial rights of the defendant".[30] This accords with the view expressed in the ABA's 1968 commentary to Guilty Plea Standard 2.1(a)(ii): "even [when] some procedural requirement has not been met[,] the defendant usually must put in additional proof to establish an actual injustice".[31]

At present, however, we need not decide whether Peterson has met or will ultimately meet his burden of proving actual injustice. The superior court has held no hearing into Peterson's allegations. Rather, the superior court granted summary judgement to the State on the basis of the pleadings. The issue before us, then, is whether Peterson would be entitled to withdraw his plea if he successfully proves all the well-pleaded assertions of fact in his petition.[32] In other words, will Peterson establish "manifest injustice" under Criminal Rule 11(h) if he proves all of his factual assertions?

We have already ruled that sex offender registration is not a direct consequence of Peterson's conviction. Thus, there is no violation of due process in holding Peterson to his plea. This conclusion would normally also indicate that Peterson's substantive rights were unaffected by the court's failure to warn him of the registration requirement. On the other hand, the Alaska Legislature specially amended Criminal Rule 11(c) to make sure that all defendants who contemplate pleading guilty to a sex offense will be personally warned of the sex offender registration law. Indeed, of all the warnings included in Rule 11(c), the warning about sex offender registration is unique—for the legislature has specified that this warning must be delivered to the defendant in writing. These legislative actions lead us to conclude that the legislature inserted section (c)(4) into Criminal Rule 11 because the legislature believed it was very important for a defendant to be aware of the sex offender registration requirement before pleading guilty (or no contest) to a sex offense.

The State argues that the warning specified in Rule 11(c)(4) is not intended to influence the defendant's decision-making, but rather is intended merely to guarantee that all sex offenders are apprised of their duty to register—so that, when these defendants leave prison, they will know that they must comply with the sex offender registration law.

The State's interpretation of Rule 11(c)(4) seems unlikely. In the same session law that amended Criminal Rule 11(c) to include a written warning about sex offender registration, the legislature also amended Criminal Rule 32, the rule governing the form of criminal judgments.[33] This amendment added section (c) to Rule 32:

> **Judgment for Sex Offenses.** When a defendant is convicted of a sex offense defined in AS 12.63.100, the written judgment must set out the requirements of AS 12.63.010.

That is, the legislature declared that whenever a defendant is convicted of a sex offense—whether by plea or by verdict—the written judgement must inform the defendant of the registration requirement.

■ Had the legislature been concerned simply with informing convicted sex offenders that they must register, the amendment to Rule 32 would have been sufficient to achieve this goal; there would have been no need for the legislature to also amend Rule 11(c). We therefore conclude that, when the legislature amended Rule 11(c) to include a warning about sex offender registration, the legislature wished to make sure that defendants considered this consequence before they pleaded guilty or no contest to a sex offense. The legislature's amendment of Rule 11(c) indicates that the legislature believed it would be unfair to allow defendants to plead guilty to a sex offense without first telling them about the registration requirement.

---

**30.** *Lewis,* 565 P.2d at 852.

**31.** *Standards Relating to Pleas of Guilty* (Approved Draft, 1968), page 55 (commentary to Section 2.1(a)(ii)).

**32.** *See Hampel v. State,* 911 P.2d 517, 523–24 (Alaska App.1996); *Steffensen,* 837 P.2d at 1125–26.

**33.** *See* SLA 1994, ch. 41, § 3.

The State correctly points out that, when the legislature enacted sex offender registration, the legislature extended the registration requirement to defendants convicted before the law was enacted.[34] Thus, there are conceivably hundreds of defendants who pleaded guilty or no contest to a sex offense before August 1994 and who now must register as sex offenders, but who had no warning of this consequence when they entered their pleas (because sex offender registration did not yet exist). The State argues, with some logic, that if the legislature believed it would be fundamentally unfair to allow an unwarned defendant to plead guilty to a sex offense, then the legislature would not have imposed registration on the many defendants who pleaded guilty before the registration law was enacted.

It is true that the legislature has enacted disparate treatment for these two groups of defendants. However, there is a plausible explanation for this disparity. The legislature could have concluded that, even though defendants now should be warned about sex offender registration before they enter their pleas, it would be too disruptive of the justice system to extend this requirement to already-convicted defendants, thus potentially re-opening hundreds of criminal cases.

The judicial branch uses this same criterion when deciding whether to give retroactive effect to a constitutional interpretation or procedural requirement announced in a court decision. See, for example, *State v. Glass*[35], where the supreme court decided not to give retroactive effect to its ruling that the Alaska Constitution forbids the government from engaging in warrantless electronic monitoring. One of the court's main concerns was that retroactive application of this rule would require re-examination of every case in which a criminal conviction rested on tape-recorded statements of the defendant, the defendant's accomplices, or witnesses.[36]

As the supreme court noted in *Glass*, whenever a court decides that some people will benefit from a new rule and other people will not, the line drawn "will inevitably be somewhat arbitrary".[37] The same is true when the legislature is confronted with an equivalent line-drawing problem. But in the case of sex offender registration, it would be reasonable for the legislature to conclude simultaneously (1) that defendants pleading guilty to sex offenses in the future should be warned about the registration requirement but (2) that it would be intolerably disruptive of the criminal justice system to apply this requirement retroactively to all defendants who had previously pleaded guilty to sex offenses.

■ We readily admit that this matter is not free from doubt. But examining the legislature's actions as a whole, we conclude that the legislature enacted Criminal Rule 11(c)(4) because they concluded that it would be manifestly unfair to allow a defendant to plead guilty or no contest to a sex offense without first warning the defendant about the requirement of sex offender registration. We therefore hold that, for defendants who pleaded guilty or no contest to an offense listed in AS 12.63.100 on or after August 10, 1994 (the effective date of SLA 1994, chapter 41), the court's failure to warn the defendant of sex offender registration is potentially "manifest injustice" for purposes of Criminal Rule 11(h)(3).

We say that this omission is "potentially" manifest injustice because, as discussed above, the court's failure to give the warning is not, in itself, enough to prove the defendant's case. It is still the defendant's burden to prove that the omission resulted in actual injustice. There would be no injustice if, for example, the defendant was otherwise aware of the registration requirement or if the defendant would have entered the plea anyway.

■ In Peterson's case, Peterson asserted that he was unaware of the registration requirement; he further asserted that, had he known of this requirement, he would not have pleaded no contest to second-degree sexual assault. These assertions are suffi-

---

**34.** *See* AS 12.63.100(4), both in its current version and in its various predecessor versions.

**35.** 596 P.2d 10 (Alaska 1979) (on rehearing).

**36.** *See id.* at 14–15.

**37.** *Id.* at 13.

cient to state a *prima facie* case for relief—a *prima facie* case of manifest injustice under Criminal Rule 11(h).

When Judge Curda granted judgement to the State and ruled that Peterson should not be allowed to withdraw his plea, the judge expressed skepticism about the truthfulness of Peterson's assertions. The judge pointed out that Peterson had waited a long time before trying to withdraw his plea, and the judge also pointed out that Peterson had received a significant reduction of the charge in exchange for his plea. However, as we noted above, this case comes to us on appeal from a dismissal on the pleadings. The superior court has never held a hearing on Peterson's claims, and thus the time has not yet arrived for the superior court to determine the facts of the case and the truth or falsity of Peterson's assertions. The question is whether the superior court was authorized to grant summary judgement to the State and dismiss Peterson's petition without a hearing. Because the assertions in Peterson's petition are, if true, sufficient to establish his entitlement to withdraw his plea, the superior court should not have dismissed Peterson's claim.

*Conclusion*

For the reasons discussed above, we AFFIRM the superior court's order dismissing Peterson's claims (1) that he was denied the right of allocution, (2) that the court failed to ascertain that he understood the nature of the charge, and (3) that he received ineffective assistance of counsel. However, we REVERSE the superior court's order dismissing Peterson's claim regarding the court's failure to apprise Peterson of the sex offender registration law.

Accordingly, we remand Peterson's case to the superior court for further proceedings on this remaining claim. We do not retain jurisdiction of this case.