**William S. BARRON, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1192.**

Court of Appeals of Alaska.

Jan. 3, 1992.

---

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS, J., and ANDREWS, Superior Court Judge.*

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Hoffman testified at trial. Hoffman's post-trial affidavit focused more specifically on his

## OPINION

COATS, Judge.

William S. Barron, Jr., was convicted, following a jury trial, of two counts of misconduct involving a controlled substance in the third degree, a class B felony. AS 11.71.030(a)(1). Barron appeals, arguing that Superior Court Judge Richard D. Savell erred in denying his motion to suppress. We affirm.

Barron first raised his motion to suppress after the jury was selected for his trial. Judge Savell declined to rule on the issue during trial, but permitted Barron to file his motion to suppress after the jury reached its verdict. In response to Barron's motion to suppress, the state filed an affidavit of Daniel Hoffman, the Fairbanks police officer who initially contacted and arrested Barron. It appears that Judge Savell decided the suppression issue based upon the testimony which was presented at trial and Hoffman's affidavit.[1]

According to Hoffman's testimony and his affidavit, on October 23, 1989, he was making a routine check at a bar in Fairbanks known as the Sunset Inn. As part of his check, Hoffman went into a public restroom. When he entered the restroom, he could see the feet of two men in the same stall. The stall was enclosed, but he could see the feet under the space between the bottom of the stall and the floor. Officer Hoffman could see that the restroom was not crowded and concluded that there was no reason for two people to use the same stall. He also noticed, from the position of the feet, that the men were well away from the commode and that they were talking to each other in low voices. Officer Hoffman stated that from experience he knew that illegal drug transactions frequently took place in restrooms of bars. Officer Hoffman concluded that a drug offense might be taking place and approached the stall to take a closer look. He stepped closer to the stall. While still in the common area of the restroom,

reasons for contacting Barron than did his trial testimony.

through a sizeable gap between the hinged door of the stall and the partition separating it from another stall, he could see Barron and another man, Robert Pailing. From this position he could see that neither man was using the stall for its intended purpose, and that both men had their clothes on. Hoffman stated:

> I felt that I was reasonable in suspecting that some type of drug activity might be involved. I was aware that if such activity within the stall was the case, the activity could readily terminate and any evidence quickly disappear. I believed that a prompt investigation was required as a matter of practical necessity.

Hoffman told Barron and Pailing to keep their hands in view and to come out of the stall. Barron and Pailing came out and stood outside the stall. At this time, Hoffman saw a plastic bag floating in clear water in the commode. Within the clear bag, Hoffman could see other small clear plastic bags which contained a white powdery substance. From his experience, Hoffman concluded that the substance in the bag was cocaine and he had interrupted a drug transaction. Hoffman arrested both Barron and Pailing and seized the plastic bag. The bag was later found to contain packets of cocaine. Barron was convicted of delivering cocaine to Pailing and possessing cocaine for purposes of delivery based upon this evidence.

■ Barron contends that Officer Hoffman's actions in contacting him constituted an illegal seizure under the fourth amendment of the United States Constitution and article I, section 14 of the Alaska Constitution. In deciding the suppression motion, Judge Savell ruled, "Officer Hoffman was lawfully in the rest room and lawfully observed activities which gave rise to reasonable suspicion and justified further investigation under *Coleman v. State,* 553 P.2d 40 (Alaska 1976)."

Under *Coleman,* a police officer can temporarily detain a person "where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred." *Coleman,* 553 P.2d at 46. The question before us for review is whether Judge Savell erred in concluding that Officer Hoffman's actions were justified under this standard.

The fourth amendment of the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*See also* Alaska Const. art. I, § 14.

In his concurrence in *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967), Justice Harlan explained that the rule protecting citizens against unreasonable searches applies when two requirements are met:

> first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."

In interpreting the meaning of article 1, section 14 of the Alaska Constitution and the privacy clause of the Alaska Constitution, article 1, section 22, the Alaska Supreme Court in *State v. Glass,* 583 P.2d 872, 875 (Alaska 1978), adopted the dual requirements set forth in Justice Harlan's concurrence.

Barron argues that because the Alaska Constitution provides broader protection than the federal constitution, this court should recognize that, under the two-pronged test approved in *Glass,* he had a reasonable expectation of privacy in a closed restroom stall. Further, Barron cites the decisions of other jurisdictions which have ruled that an individual has a right to privacy in a public bathroom stall. *See People v. Triggs,* 8 Cal.3d 884, 106 Cal.Rptr. 408, 506 P.2d 232 (1973); *Bielicki v. Superior Court,* 57 Cal.2d 602, 21 Cal. Rptr. 552, 371 P.2d 288 (1962); *Brown v. State,* 3 Md.App. 90, 238 A.2d 147 (1968); *People v. Dezek,* 107 Mich.App. 78, 308

N.W.2d 652 (1981); *Buchanan v. State*, 471 S.W.2d 401 (Tex.Crim.App.1971).

The state distinguishes all the cases cited by Barron and argues that Barron's reliance on these decisions is mistaken. With regard to *Bielicki* and *Triggs*, the state correctly points out that under a more recent decision by the California Supreme Court, the *Triggs* holding was expressly limited to the proposition that "a public restroom gives rise to a reasonable expectation of freedom from observation by a law enforcement officer who has assumed a clandestine, unexpected vantage point to spy indiscriminately on all who enter." *In Re Deborah C.*, 30 Cal.3d 125, 177 Cal. Rptr. 852, 858, 635 P.2d 446, 452 (1981).

In his treatise on search and seizure, Professor LaFave analyzes the cases in this area as follows:

> *Katz*, properly viewed, extends the limitations of the Fourth Amendment to those forms of police surveillance which cannot be "permitted to go unregulated by constitutional restraints." Clandestine peeping into rest rooms is surely one type of surveillance which cannot be left to the whim of the police, whether there are doors on the stalls or not. . . .
>
> . . . .
>
> [However,] if the police merely enter a rest room and see conduct occurring within a stall which is "readily visible and accessible" to any member of the public who so enters, there is ... no intrusion into a justified expectation of privacy. Under certain circumstances, even an entry into a locked rest room will not amount to a search.

1 LaFave, *Search and Seizure*, § 2.4(c) at 440–41 (1987) (footnotes omitted).

■ We believe that the cases suggest that when one is in a public restroom, a person has a reasonable expectation of privacy which society is prepared to recognize. However, that expectation of privacy is limited by the fact that the restroom is in a public area and one's behavior is subject to the observation of others who are in the public area. When a police officer who is in a public area observes two people using the same restroom stall, and apparently not using the stall for its intended purpose, then these observations may permit the police officer to take further reasonable steps to investigate. For instance, in *People v. Mercado*, 68 N.Y.2d 874, 508 N.Y.S.2d 419, 420, 501 N.E.2d 27, 28 (1986), an officer entered a restroom in an airport after receiving a tip that two men were occupying one of the stalls. The officer saw only one stall with a closed door, noted that only one pair of legs was visible, but heard two low male voices conversing in the stall. *Id.* He then attempted to peer through the crack in the door and saw two individuals inside—the second with his feet on the toilet. *Id.* 508 N.Y.S.2d at 420, 501 N.E.2d at 29. The officer next entered the adjoining stall, stood on the toilet, peered over the stall wall, and saw that both occupants of the other stall possessed drugs. *Id.*

Mercado was arrested, and, before trial, filed a motion to suppress the evidence. The motion was denied. On appeal Mercado claimed he had a reasonable expectation of privacy in the toilet stall. The New York Court of Appeals agreed that Mercado had a reasonable expectation of privacy in a public restroom stall. Despite this determination, the court found that the officer could reasonably conclude that a drug crime was occurring in the stall based upon the tip and his observations. *Id.* 508 N.Y.S.2d at 421, 501 N.E.2d at 30. The court held the officer's actions were justified under the fourth amendment.

In the instant case, Officer Hoffman entered a public restroom and, from a public place, saw that two men were engaging in some sort of transaction in the lavatory stall. He suspected criminal activity, most probably a drug transaction. He therefore took a closer look, again observing from a public area. From his observations, he concluded that he was probably observing an illegal drug transaction. He therefore told the men to come out of the stall. When they did, he was able to observe evidence which led to Barron's conviction on the drug offenses. We conclude that Judge Savell could properly find that Officer Hoffman's actions were justified under

*Coleman.* Officer Hoffman had reasonable suspicion that he had stumbled into an illegal drug transaction. It was necessary for Hoffman to conduct "a prompt investigation ... as a matter of practical necessity." *Coleman,* 553 P.2d at 46 (quoting *Goss v. State,* 390 P.2d 220, 224 (Alaska 1964)). Judge Savell could properly find that Officer Hoffman's response was minimally intrusive and was a reasonable response to the situation which he observed. *See State v. G.B.,* 769 P.2d 452, 456 (Alaska App.1989) (in applying the *Coleman* rule, the court must balance the seriousness of the offense, the recency of the crime, the strength of the officer's reasonable suspicion, and the actual intrusiveness of the investigative stop).

The conviction is AFFIRMED.