**STATE of Alaska, Petitioner,**

v.

**Edward PAGE, Jr., Respondent.**

**No. A–5205.**

Court of Appeals of Alaska.

Feb. 9, 1996.

Hearing Granted April 22, 1996.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Respondent.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

### OPINION

MANNHEIMER, Judge.

In *State v. Glass*, 583 P.2d 872 (Alaska 1978), the Alaska Supreme Court held that the police must obtain a warrant before surreptitiously recording people's conversations. We are now asked to decide whether the police may surreptitiously record people's ac-

tivities on videotape without first obtaining a *Glass* warrant if the police confine themselves to the video-recording capabilities of the electronic equipment and do not employ its audio capabilities.

Edward Page, Jr. was suspected of selling cocaine. The police hid videotaping equipment in a Fairbanks apartment and, through an informant, they arranged for Page to come there to make a delivery of cocaine.[1] The police had placed three video cameras in the apartment: one was focused on the parking area and front door to the building, another was focused on an amusement arcade across the street, and a third was housed inside a non-functioning television set in the living room of the apartment.

After he was charged, Page learned that the police had videotaped him. He asked the superior court to suppress the videotape, arguing that the police had violated *Glass* because they had not obtained a warrant before they recorded his activities.

A hearing on Page's motion was conducted on January 21, 1994, before Superior Court Judge Richard D. Savell. The State conceded that, under *Glass*, the police would have needed a warrant to record the conversation between Page and the undercover officer. However, the State argued that no warrant was needed if the police simply recorded video images of Page's conduct.

Judge Savell granted Page's suppression motion in part. The judge ruled that Page had no expectation of privacy with respect to observation of his conduct in public places (the parking lot or the arcade). However, Judge Savell ruled that Page did have an expectation of privacy when he moved inside the apartment. Judge Savell therefore suppressed the videotape recorded by the camera hidden inside the television. The State asks us to reverse that ruling.

The facts of this case are not in dispute. The State concedes that Page and the police informant were engaged in a conversation that was protected from electronic monitoring under the supreme court's decision in *Glass*. The State further concedes that there were no exigent circumstances that might excuse the police's failure to procure a *Glass* warrant. Finally, the State concedes that the conversation between Page and the police informant took place in a private residence.

 Given these facts, the issue of whether the police had to secure a warrant before they surreptitiously videotaped Page's conversation with the police informant is a question of law. We therefore review this issue de novo. *See State v. Resek,* 706 P.2d 706, 707 (Alaska App.1985). We now hold that if a person engages in a conversation that is protected from electronic monitoring under *Glass,* and if this conversation occurs in a place where the person has a reasonable expectation of visual privacy, then the police must secure a warrant before surreptitiously videotaping the conversation, even if they turn the sound off.

 In *Glass,* the Alaska Supreme Court adopted a two-pronged test to be employed when construing the scope of privacy granted by Article I, Sections 14 and 22 of the Alaska Constitution. Under these sections of the state constitution, a person is protected from unreasonable government intrusion whenever (1) the person manifests a subjective expectation of privacy in the property or activity being subjected to government scrutiny, and (2) this expectation of privacy is one that society recognizes as reasonable. *Glass,* 583 P.2d at 875, 880.

 The first prong of this test (a person's subjective expectation of privacy) presents a question of fact. However, the second prong (the reasonableness of any expectation of privacy) presents a legal question. The answer to this second prong of the test rests on constitutional intent and, ultimately, on a

---

1. The video camera was placed in the apartment with the knowledge and consent of the manager. The manager of the apartment complex had earlier notified the police that her tenants had complained to her about drug deals being conducted in the nearby vicinity. The manager agreed to let the police use an unoccupied (but furnished) apartment in order that an undercover police informant might solicit potential drug sellers and then have them return to the apartment to conduct the actual sales. The police brought in food, trash, and articles of clothing to make the apartment look "lived in".

judgement concerning the proper balance to be struck between the rights of the individual and the authority society exercises over individuals through the agency of government.

■ The State does not contest that Page subjectively expected his activities in the apartment to be private. The remaining question "is whether that expectation of privacy is one that society is prepared to recognize as being reasonable". *Glass*, 583 P.2d at 880.

The State argues that the warrant requirement established in *Glass* to regulate police monitoring of conversations should not apply to police videotaping of non-verbal physical conduct. The State points out that much of the discussion in *Glass* focuses on the importance of free speech in a democratic society and on the chilling effect that unrestricted police monitoring would have on political and social discourse. *Glass*, 583 P.2d at 876–78.

■ *Glass* involved the electronic monitoring of a conversation; it was thus natural that the supreme court would focus its decision on the importance of speech. But the privacy interests protected by Article I, Sections 14 and 22 of the state constitution apply to activities other than speech. As the supreme court noted in *Glass*, "The meaning of privacy of necessity must vary depending on the factual context[.]" *Id.* at 879–880.

American tort law recognizes the principle that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another . . . is subject to liability . . . for invasion of [the other person's] privacy, if the intrusion would be highly offensive to a reasonable person." *Restatement of Torts (Second)* (1976), § 652B, Vol. 3, pp. 378–79. The Restatement declares that an actionable intrusion is not limited to "physical intrusion into a place in which the plaintiff has secluded himself[;] . . . [it] may also be [accomplished] by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs". *Id.* Thus, under many circumstances, if a

person is in a place where he or she can reasonably expect privacy, tort law protects the person from unconsented-to observation or photography. *See*, for example, *Huskey v. National Broadcasting Company, Inc.*, 632 F.Supp. 1282, 1289 (N.D.Ill.1986) (citing the Restatement, § 652); *Cohen v. Herbal Concepts, Inc.*, 100 A.D.2d 175, 473 N.Y.S.2d 426, 427–28 (1984) (surreptitious photography), *order aff'd* 63 N.Y.2d 379, 482 N.Y.S.2d 457, 472 N.E.2d 307 (1984). *But see Muratore v. M/S Scotia Prince*, 656 F.Supp. 471, 482–83 (D.Me.1987), *rev'd in part on other grounds*, 845 F.2d 347 (1st Cir.1988); *Stessman v. American Black Hawk Broadcasting Co.*, 416 N.W.2d 685, 686–88 (Iowa 1987) (surreptitious photographing of a person in a public place is not actionable).

■ In the present case, Page voluntarily accompanied the undercover officer to the apartment. He knew that his conduct inside that apartment would be observed by the undercover officer (whom Page believed to be a drug customer). Page can hardly claim that he expected complete visual privacy inside the apartment. However, the decision in *Glass* is premised on the legal rule that people who knowingly reveal private matters to other occupants of a room are nonetheless entitled to expect that these private matters are not being simultaneously broadcast to other locations or electronically recorded for later scrutiny.[2]

We therefore reject the State's argument that its videotaping of Page's private meeting with the undercover officer was a *de minimis* invasion of his privacy. Just as the Alaska Constitution (as construed in *Glass*) protected Page against surreptitious electronic monitoring or recording of his words to the undercover officer, we conclude that our state's constitution also protected Page from surreptitious photography or videotaping of that meeting. Surreptitious video monitoring and recording of people's private activities has the same "corrosive impact . . . on our sense

---

**2.** See *Barron v. State*, 823 P.2d 17 (Alaska App. 1992), where this court recognized that a person in a restroom can not expect complete privacy from the observations of other persons in the restroom but can still expect privacy from "clandestine peeping". *Id.* at 20 (quoting Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (2nd ed. 1987), § 2.4(c), Vol. 1, pp. 440–41).

of security", *Glass*, 583 P.2d at 877, as surreptitious audio monitoring and recording.

■ The State next argues that, even if people have a right to expect that their private activities will not be surreptitiously videotaped, this expectation is substantially diminished when the person's private activities are of a commercial nature. Because Page was engaged in the sale of drugs, the State contends, he had little expectation of privacy.

■ The fact that business might be discussed or transacted in a private residence does not deprive the occupants of their normal expectation of privacy. Stripped of its trimmings, the State's argument appears to be that Page had no reasonable expectation of privacy because he was using the apartment to transact illegal business—the sale of cocaine. The supreme court answered this contention in *Glass:*

> It is, of course, easy to say that one engaged in an illegal activity has no right to complain if his conversations are broadcast or recorded. If, however, law enforcement officials may lawfully [use informants] to record and transcribe private conversations, nothing prevents monitoring of . . . persons not engaged in illegal activity, who have incurred [official] displeasure, have not conformed[,] or have espoused unpopular causes.

*Glass*, 583 P.2d at 878. In other words, because of the value our society places on individual privacy, we can not give the police unfettered discretion to decide when electronic monitoring of private conversations might be justified to detect or prevent illegal conduct. The same holds true for clandestine videotaping of non-public activities.

Given the narrow facts of Page's case, we need not completely define the relationship between the government's need to employ clandestine video surveillance as an investigative technique and the individual citizen's right to visual privacy. Instead, we confine ourselves to the circumscribed issue before us.

Page was engaged in a conversation which, the State concedes, was protected from warrantless monitoring under *Glass*. This conversation took place in a private apartment, a location where Page could reasonably expect that his activities would not be observed by anyone except those onlookers whose presence he was aware of. We hold that, in these circumstances, the Alaska Constitution as interpreted by the supreme court in *Glass* requires the police to secure a warrant before engaging in surreptitious videotaping of a conversation. It makes no difference that the police turn down the audio recording level on their equipment.

The decision of the superior court suppressing the videotape made inside the apartment is AFFIRMED.