Michael R. PATTERSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6718.

Court of Appeals of Alaska.

July 23, 1999.

Rehearing Denied Sept. 2, 1999.

Hearing Denied Dec. 23, 1999.

Phillip Paul Weidner, Weidner & Associates, and Verne E. Rupright, Stepovich, Kennelly, & Stepovich, P.C., Anchorage, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Michael R. Patterson was convicted of first-degree sexual abuse of a minor [1] in 1988. Based on that conviction, the Alaska Sex Offender Registration Act "ASORA" requires Patterson to periodically register with the nearest police authority.[2] An Alaska State Trooper issued Patterson a citation to appear in district court for failing to register as a sex offender because Patterson had not registered with either the state or local police.[3]

After Superior Court Judge Jonathan H. Link denied Patterson's multi-prong attack on the constitutionality of ASORA, Patterson entered a *Cooksey*[4] plea to the charge of failing to register. He renews his constitutional challenges in this appeal.

Because Patterson has not convinced us that there is a constitutional bar to prosecuting him for failing to register as a sex offender, we affirm his conviction.

*Facts and proceedings*

In 1994, the Alaska Legislature enacted ASORA. ASORA was codified in Title 12, chapter 63 and Title 18, chapter 65, section 87 of the Alaska Statutes.[5]

Alaska Statute 12.63.010(b)(1) requires a convicted sex offender[6] to register at the Alaska State Trooper post or municipal police department nearest to where the sex offender resides at the time of registration.[7]

A registrant must allow the police to take a set of fingerprints and a photograph, and must provide biographical information including his or her name, address, date of birth, driver's license number, aliases, place of employment, and date and court of his or her sex-offense conviction.[8] In addition, the sex offender must provide written notice within ten days of a change of residence to the nearest law enforcement office.[9]

If the sex offender has one conviction, he or she must register annually for the fifteen years following his or her unconditional discharge from supervision.[10] If the sex offender has two or more sex offense convictions, the duty to register continues for life.[11] The duty to register applies retroactively, requiring sex offenders who received an unconditional discharge before enactment of the law to register.[12] Patterson was unconditionally discharged before the enactment of ASORA.

Alaska Statute 18.65.087 directs the Department of Public Safety to create a registry of all registered sex offenders and to permit public access to that registry. For each sex offender, the registry includes the offender's biographical information that ASORA requires the offender to provide upon registration. Upon request, this information is released to any member of the public.

On March 14, 1996, an Alaska State Trooper reviewed ASORA computer records and found that Patterson failed to register. A

---

1. AS 11.41.434(a)(1).

2. AS 12.63.010—.100.

3. Former AS 11.56.840 provides:
 A person who knowingly fails to (1) register, (2) file the written notice of change of address, or (3) file the annual written notice or statement, as required in AS 12.63.010, is guilty of a class A misdemeanor.

4. *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

5. The 1998 legislative session modifications to these statutes are not at issue here.

6. A "sex offender" is a person convicted of a specifically enumerated "sex offense" as defined by AS 12.63.100(3). The statute has been amended to include child kidnapping.

7. AS 12.63.010(b)(1).

8. *See id.* In ch. 106, § 8, SLA 1998, the legislature amended this section to include additional information not at issue in this case.

9. AS 12.63.010(c).

10. AS 12.63.020(a)(2).

11. AS 12.63.020(a)(1).

12. *See* former AS 12.63.100(2): " 'sex offender' means a person convicted of a sex offense in this state or another jurisdiction regardless of whether the conviction occurred before, after, or on August 10, 1994[.]"

trooper contacted Patterson to ask why he had not registered. Patterson told the trooper that his attorney had advised him not to comply with the registration requirement. The trooper served Patterson with a citation charging him with failing to register as a sex offender.

In the trial court, Judge Link denied Patterson's motion to dismiss. Patterson renews his constitutional objections to ASORA in this appeal.

## Discussion

*The duty to register under ASORA does not violate the prohibition against ex post facto legislation.*

■ Patterson argues that ASORA violates the prohibition against *ex post facto* legislation contained in both the federal and Alaska constitutions.[13] Both constitutions prohibit "the retrospective application of laws that 'alter the definition of crimes or increase the punishment for criminal acts.' "[14] ASORA is clearly retrospective. However, "[t]he mere fact that [a statute] alters a convicted felon's circumstances to his or her disadvantage does not in itself invalidate the statute as ex post facto."[15]

The threshold question we must answer when deciding if ASORA is an *ex post facto* law is whether the notification or the registration provisions of ASORA increase the quantum of punishment Patterson received from his sexual abuse of a minor conviction. In determining whether ASORA is punitive legislation, both parties recognize the utility of the "intent-effects" test.[16]

The analysis under the "intent-effects" test is twofold: first, we decide whether the legislative intent behind ASORA was to regulate or to punish sex offenders; second, if the purpose was not punishment but regulation, then we must decide whether the effects of that regulation are so punitive that we must nevertheless view ASORA as punishment. Under the "intent-effects" test, if the legislature's intent is regulatory, Patterson must provide the "clearest proof" that ASORA is punishment.[17] Other courts have applied the "intent-effects" test in several cases where the validity of sex-offender registration statutes was examined and upheld.[18]

Here, the articulated purpose of ASORA is regulatory and based on public safety concerns. The legislature made the following findings:

(1) sex offenders pose a high risk of reoffending after release from custody;

(2) protecting the public from sex offenders is a primary governmental interest;

(3) the privacy interests of persons convicted of sex offenses are less important than the government's interest in public safety; and

(4) release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety.[19]

These findings state explicitly that recidivism of sex offenders is a problem and that the registration of sex offenders and the release of certain information about them will protect the public. As the State points out, there is no question that protection of the public is a valid regulatory purpose. On its face, the legislature's intent to promote public welfare is a valid regulatory goal.

Patterson counters that the statutes' goals are retribution and deterrence and that those

---

13. *See* U.S. Const. art. I, §§ 9, 10; Alaska Const. art. I, § 15.

14. *Amin v. State,* 939 P.2d 413, 416 (Alaska App. 1997) (citing *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

15. *State v. Anthony,* 816 P.2d 1377, 1378 (Alaska 1991).

16. *See e.g., Russell v. Gregoire,* 124 F.3d 1079, 1086–88 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998);

*Doe v. Pataki,* 120 F.3d 1263, 1273–75 (2d Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998).

17. *Russell,* 124 F.3d at 1087; *Pataki,* 120 F.3d at 1274.

18. *See e.g., Russell,* 124 F.3d at 1087; *Pataki,* 120 F.3d at 1273–75; *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998).

19. Ch. 41, § 1, SLA 1994.

goals are "reserved for the criminal system alone." Patterson concludes that ASORA is not a valid exercise of the State's regulatory power because the legislature's focus was on sex offenders, not on the eligibility of individuals to engage in a certain activity, a classic indication of regulation by the legislature.

Patterson argues that four characteristics of ASORA establish the legislature's punitive intent: (1) the effects of ASORA are triggered by a past conviction, (2) ASORA imposes duties and restraints on a sex offender, (3) ASORA "invades vested rights and it lengthens the period of time that the offender must be under the supervision of authorities," and (4) the registration provision of ASORA was codified in Title 12 of the Alaska Statutes, the title that contains the code of criminal procedure.

■■■ Using a prior criminal conviction to trigger a subsequent consequence does not alone prove that the legislature had a punitive intent. In *State v. Anthony,* our supreme court upheld an *ex post facto* challenge to a statute that barred previously convicted felons from receiving permanent fund dividends.[20] The court recognized that a statute altering the circumstances of a convicted felon could withstand an *ex post facto* challenge if the statute had a valid regulatory purpose.[21] In *Anthony,* the legislature's articulated purpose was to obtain funds for crime victims. The court concluded that this articulated purpose combined with the statute's goal to reimburse the State for the cost of the prisoner's confinement established that the statute's purpose was compensatory and not punitive.

■■■ ASORA imposes a duty on a sex offender to register and to provide updates when residential circumstances change. That duty continues for a minimum of fifteen years following an offender's final discharge from supervision. The act of registration does not parallel measures that are traditionally punitive. Registration involves no active supervision, treatment, or restriction of the registrant's activities. The registrant is not required to submit to a search at the request of a probation or parole officer, or otherwise comply with the conditions usually attendant on parole release or probation supervision. Although the prospect of registration may have a deterrent effect, a recognized attribute of criminal sentencing, deterrence can serve civil goals as well. The only "restraint" imposed by ASORA is the brief impact on personal liberty while performing that actual act of registration.

Patterson also maintains that ASORA increases his punishment because he analogizes the duty-to-register period with the supervision component of probation. However, as we noted above, unlike normal periods of probation, ASORA imposes no behavioral restrictions and includes no potential sanctions for violating those restrictions. ASORA only defines the duty to register, and the potential charge for failing to register, if a sex offender does not satisfy that duty. We conclude that the duties imposed on a sex offender by ASORA are not analogous to the supervision of a defendant's conduct imposed by incarceration, parole, or probation. Compliance with ASORA does not entail any supervision of a sex offender's behavior. It merely requires disclosure of his or her general whereabouts by imposing the duty of periodic registration and reporting.

Finally, the placement of the registration provisions in Title 12, identified as the Code of Criminal Procedure, does not convince us that ASORA is punitive. The various chapters in Title 12 address many facets of the criminal process including initial considerations such as arrest, bail, rights of victims, and trial and post-trial matters. We conclude that the placement of ASORA—a by-product of a sex offender's conviction—in Title 12 does not indicate that the legislature had a punitive intent.

The arguments raised by Patterson—the placement of some of ASORA in Title 12, the imposition of a duty on a sex offender to register, the trigger by past conviction for a sex offense, and the purported supervision of the sex offender—do not amount to proof of

---

20. *See Anthony,* 816 P.2d at 1379.

21. *See id.* at 1378; *see also De Veau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

a legislative intent to punish. We conclude that the statute, read with the legislative findings, does not reflect a punitive legislative intent. Patterson has offered no proof challenging the link recognized by the legislature between commission of certain sex offenses and the propensity for recidivism.

■ Although we conclude that Patterson has not shown a punitive legislative intent, Patterson may still show that the effect of the regulatory statute is so severe that ASO-RA is punishment. When we undertake this inquiry into the "effects" of ASORA, we must accept the manifest intent of the legislature unless Patterson clearly proves that the statutory scheme is so punitive in effect that the non-punitive purpose of the legislature is negated.[22]

■ Alaska Statute 12.63.010 requires a sex offender to register in person at the nearest Alaska State Trooper post or municipal police department within a specified number of days after release from in-state custody or after arrival in Alaska.[23] The registration form requires the disclosure of the offender's name, address, place of employment, date of birth, the crime that triggered registration as a sex offender, the date(s) of sex offense convictions, place and court of sex offense convictions, aliases, and driver's license number.[24] In addition, the registrant must allow the police to take a set of fingerprints and a photograph.[25] In *Kennedy v. Mendoza–Martinez*,[26] the Supreme Court applied seven guiding factors to use when analyzing whether a statute's effect is punitive: whether the required conduct or prohibition—the statute's impact—entails an affirmative disability or restraint, whether

that impact has historically been regarded as punitive, whether that impact depends upon a finding of criminal intent, whether that impact will operate to promote traditional punishment objectives, whether that impact applies to behavior that is already a crime, whether that impact has an alternative non-punitive purpose, and finally, whether that impact is excessive in relation to the non-punitive purpose.[27]

■ Examining ASORA in light of the *Kennedy* factors, the "effects" portion of the "intent-effects" test, we find that although the impact of compliance with ASORA is significant, it is not fatal to the statute.[28] ASORA does provide for dissemination of substantial personal and biographical information about a sex offender that is not otherwise readily available from a single governmental source. Patterson argues that the ready availability of this information will potentially result in personal harassment, embarrassment, or retribution by members of the public. While members of the community may view sex offenders with distrust or hostility, the legislature has not encouraged acts of retribution or violence against sex offenders. We follow the decisions in other jurisdictions sustaining their sex offender registration acts in the face of arguments that the acts violate the constitutional provisions against *ex post facto* legislation.[29] Therefore, we reject Patterson's claim that ASORA violates the prohibition against *ex post facto* legislation.

### ASORA does not violate double jeopardy.

■ Patterson next claims that prosecuting him for failing to register as a sex offend-

22. *See Russell,* 124 F.3d at 1087.

23. AS 12.63.010(a).

24. AS 12.63.010(b)(1).

25. AS 12.63.010(b)(2).

26. 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

27. *See id.* at 168–69, 83 S.Ct. 554 (citations omitted).

28. *See Russell,* 124 F.3d at 1091–93.

29. *See Russell v. Gregoire,* 124 F.3d 1079 (9th Cir.1997); *Doe v. Pataki,* 120 F.3d 1263 (2d

Cir.1997); *Artway v. Attorney Gen. of New Jersey,* 81 F.3d 1235 (3d Cir.1996); *State v. Noble,* 171 Ariz. 171, 829 P.2d 1217 (1992); *People v. Starnes,* 273 Ill.App.3d 911, 210 Ill.Dec. 417, 653 N.E.2d 4 (1995); *State v. Manning,* 532 N.W.2d 244 (Minn.App.1995); *State v. Costello,* 138 N.H. 587, 643 A.2d 531 (1994); *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995); *Williford v. Board of Parole & Post–Prison Supervision,* 137 Or.App. 254, 904 P.2d 1074 (1995); *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994); *In re Estavillo,* 69 Wash.App. 401, 848 P.2d 1335 (1993); *State v. Taylor,* 67 Wash.App. 350, 835 P.2d 245 (1992); *Snyder v. State,* 912 P.2d 1127 (Wyo. 1996).

er violates the double jeopardy clause of the federal and state constitutions. He notes that a person must first be convicted of a sex offense before they have a duty to register as a sex offender. From this fact, Patterson concludes that a person's underlying sex offense is a "lesser included offense" of failing to register as a sex offender. Relying on *Blockburger v. United States* [30] and *Tuckfield v. State*,[31] Patterson argues that the government is prohibited from prosecuting a person for the underlying sex offense (the purported "lesser included" offense) and then later prosecuting the person for the "greater" offense of failing to register as a sex offender. This series of events, according to Patterson, is the equivalent of putting a defendant in jeopardy twice for the same offense.

The Alaska Supreme Court addressed and rejected a similar contention in *Danks v. State*.[32] The issue in *Danks* was whether a statute that increased penalties for repeat drunk driving offenders could lawfully apply to a defendant who committed drunk driving after the new law came into effect but whose prior offenses were committed before the passage of the new law. The defendant in *Danks* argued that sentencing him to the increased penalties of the new law would amount to an unconstitutional retroactive application of the law. The supreme court disagreed. Quoting from *Gryger v. Burke*,[33] our supreme court stated:

> [T]he fact that one of the convictions that entered into the [defendant's sentencing] calculations ... occurred before the Act was passed [does not make] the Act invalidly retroactive[.] ... *The [defendant's] sentence as a [repeat] offender or habitual criminal is not to be viewed as either a new jeopardy or [an] additional penalty for the earlier crimes.* It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.[34]

This is the accepted view on this matter, both regarding increased punishments and new offenses that include, as an element of the crime, proof that the defendant was previously convicted of an offense:

> If the defendant commits crime *A* at a time when there is no habitual criminal statute, then such a statute is passed imposing increased punishment for a second offense, and then the defendant commits crime *B*, it is not within the ex post facto prohibition to apply the habitual criminal statute to crime *B*. No additional punishment is prescribed for crime *A*, but only for the new crime *B*, which was committed after the statute was passed. *Similarly, it is permissible to define a crime as limited to certain conduct engaged in by persons who have theretofore been convicted of some other offense and to apply the statute to one whose earlier offense and conviction predated the enactment of this [new] statute.*[35]

Based on these authorities, we reject Patterson's double jeopardy claim. His prosecution for failing to register as a sex offender was not a renewed jeopardy for his original sex offense. Rather, Patterson was prosecuted for a new crime—failing to perform a duty imposed on citizens previously convicted of sex offenses. Similarly, any punishment imposed on Patterson for failing to register will be punishment for this new crime, not an additional punishment for his original sex offense.

*ASORA does not violate Patterson's right to privacy.*

Patterson maintains that the notification provisions of ASORA, AS 18.65.087, violate his implicit right of privacy under federal law and his explicit right to privacy granted

---

**30.** 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**31.** 621 P.2d 1350 (Alaska 1981).

**32.** 619 P.2d 720 (Alaska 1980).

**33.** 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948).

**34.** *Danks*, 619 P.2d at 722 (emphasis added) (citations omitted).

**35.** 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 2.4, at 139 (1986) (emphasis added) (citations omitted).

by article I, section 22, of the Alaska Constitution.

Although there is no explicit right of privacy in the federal constitution, the United States Supreme Court had recognized "zones of privacy" created by specific constitutional guarantees.[36] These zones of privacy have involved fundamental interests—those types of interests where the government is limited in its power to regulate conduct—such as marriage, contraception, and child rearing.[37] The Supreme Court also recognizes an individual's interest in non-disclosure of personal matters.[38] This interest in non-disclosure is recognized in other cases and has been described as a right of confidentiality.[39]

Patterson attempts to find support for his federal privacy claim in two Supreme Court cases: *United States Dep't of Defense v. F.L.R.A.*[40] and *United States Dep't of Justice v. Reporters Committee for Freedom of the Press.*[41] However, both of those cases turned on a question of statutory interpretation under the Freedom of Information Act, not on an implicit federal constitutional right of privacy.

In *F.L.R.A.*, the court decided that disclosure to the union of the home addresses of federal employees in a union's bargaining unit was barred by the statutory personal privacy exemption[42] contained in the Freedom of Information Act.[43] In *Reporters Committee*, the court balanced the personal privacy interest in FBI criminal rap sheets created by the statutory exemption[44] from disclosure, against the public interest promoted by the Freedom of Information Act (to open agency action to public review).[45] As a categorical matter, the court concluded that the little information about agency action that disclosure of rap sheets would provide was outweighed by the statutory exemption from disclosure. The court also noted that its decision rested on statutory interpretation, not on constitutional privacy grounds.[46]

Patterson also relies on *Doe v. Poritz*[47] to support his claim that ASORA unconstitutionally invades his privacy rights. The *Poritz* court recognized that the New Jersey sex offender notification and registration statute implicated a sex offender's privacy interest.[48] The *Poritz* court also recognized the public welfare interest expressed by the legislature: because sex offenders had a considerable likelihood of recidivism, the registration and notification statute promoted public safety by giving the public information on the identity and proximity of sex offenders. Therefore, the court concluded that the public interest in disclosure substantially outweighed a sex offender's personal privacy interest.[49]

In addition to requiring fingerprints and a photograph, ASORA mandates that a registrant provide his or her name, address, date of birth, driver's license number, aliases, place of employment, and the date and court of their sex-offense conviction. Under AS 18.65.087(b), all the information that a sex offender provides is confidential except the information that the public can access pursuant to a request for information: the sex offender's name, address, date of birth, place

---

36. *Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

37. *See id.*

38. *See Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

39. *See National Treasury Employees Union v. United States Dep't of the Treasury*, 25 F.3d 237, 242 (5th Cir.1994); *Doe v. New York*, 15 F.3d 264, 266 (2d Cir.1994); *Plante v. Gonzalez*, 575 F.2d 1119, 1133 (5th Cir.1978).

40. 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994).

41. 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

42. 5 U.S.C. § 552(b)(6).

43. *F.L.R.A.*, 510 U.S. at 502, 114 S.Ct. 1006.

44. 5 U.S.C. § 552(b)(7)(C).

45. *Reporters Committee*, 489 U.S. at 778–80, 109 S.Ct. 1468.

46. *See id.* at 762 n. 13, 109 S.Ct. 1468.

47. 142 N.J. 1, 662 A.2d 367 (1995).

48. *See id.* at 409.

49. *See id.* at 411–12.

of employment, photograph, and the details of his or her conviction.

Regardless of the precise bounds of the federal right of privacy, the right does not attach to matters already within the public domain.[50] The biographical information about a sex offender that the public can access under ASORA is information that is in large part already in the public domain. Most of that information is already in the sex offender's criminal case file. The Supreme Court noted that a person does not have an objectively reasonable expectation of privacy in his or her appearance or physical characteristics.[51]

We conclude that Patterson has not provided any compelling reason or authority to show that ASORA violates an implied right of privacy based on the federal constitution.

 Patterson also argues that ASORA violates his personal and constitutional right to privacy under article I, section 22, of our constitution. The Alaska Supreme Court has adopted a two-prong test for construing the scope of Alaska's right to privacy.

A person is protected from unreasonable government intrusion whenever (1) the person manifests a subjective expectation of privacy in the property or activity being subjected to government scrutiny, and (2) this expectation of privacy is one that society recognizes as reasonable.[52]

 Determining a person's subjective expectation of privacy presents a question of fact. Whether that subjective expectation of privacy is one that society will recognize as reasonable is a question of law that considers the balance between the subjective expectation of privacy of the individual versus the public interest.[53]

If Patterson has a subjective expectation of privacy in all the information that he must provide upon registration, we must balance

that assumed expectation of privacy against the public interest. Then, we decide if society will recognize that assumed expectation of privacy as reasonable. The public interest, as expressed by the legislature, centers on protecting public safety and welfare.

 We held in *State v. Chryst* that an individual's subjective expectation of privacy in his or her name and address is not an expectation that society would recognize as reasonable.[54] As we already noted, the details of an offender's conviction and date of birth are matters of public record. Patterson has offered no authority that society would recognize his subjective expectation of privacy in his physical appearance—as represented by his photograph—as reasonable. Case law is contrary to Patterson's position.[55] Patterson has also not offered any authority that he has a reasonable expectation of privacy in his employer's address.

 As the supreme court noted in *State v. Glass*, the constitutional protection of an individual's privacy depends on the factual context and the competing interests between society and the individual.[56] In contravention to an individual's normal ability to decide when, what, and to whom to release personal information, ASORA forces a sex offender to divulge personal information to the government. The government then allows public access to some of that information. This compilation of personal information and its public accessibility represents a notable and significant alteration in the relationship between an individual and the government. The release of a sex offender's personal information also represents a loss of personal control over that biographical data. However, the individuals whose privacy interests have been affected are members of an identifiable group, convicted sex offenders, that the legislature considered a sufficient public safe-

---

50. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 493–96, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).

51. *See United States v. Dionisio*, 410 U.S. 1, 5–7, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

52. *State v. Page*, 911 P.2d 513, 515 (Alaska App. 1996) (citing *State v. Glass*, 583 P.2d 872, 875, 880 (Alaska 1978)).

53. *See Page*, 911 P.2d at 515–16.

54. 793 P.2d 538, 542 (Alaska App.1990).

55. *See Dionisio*, 410 U.S. at 14–15, 93 S.Ct. 764.

56. *See Glass*, 583 P.2d at 879–80.

ty risk to justify the creation of the registry and the release of that biographical data.

We recognize the tension between the personal interests of individuals, like Patterson, and society's interest in public safety. Because of the legislature's expressed interest in public safety, we conclude that Patterson's assumed subjective expectation of privacy in the biographical information released pursuant to ASORA must yield to society's public safety interest. Patterson's assumed expectation of privacy is not an expectation that society will recognize as reasonable. Therefore, we conclude that ASORA does not violate Patterson's right to privacy under article I, section 22, of the Alaska Constitution.

*ASORA does not violate procedural due process or fundamental fairness.*

 Patterson claims that ASORA deprives him of a liberty interest without procedural due process and is fundamentally unfair because it does not provide for any hearing before his personal information is entered into the Department's registry. Patterson again cites *Doe v. Poritz* [57] to support his argument. The notification protocol reviewed in *Poritz* provided for a three-tiered protocol for community notification of registered sex offenders. The protocol triggered more active notification of the local community if an administrative assessment found that the offender presented more than the lowest level risk of re-offense. The New Jersey court concluded that due process entitled a sex offender to a hearing before the offender was classified as having more than the lowest level risk of re-offense.

Unlike the New Jersey statute, Alaska's notification statute does not include an administrative assessment that can result in a more expansive distribution of information about the offender. Under ASORA, the Department of Public Safety collects the information provided by each registrant but performs no adjudication or classification of individual offenders. The Department creates the registry and enables public access to that registry. Patterson has not cited

authority that due process requires public access only to biographical information on those sex offenders with the greatest probability for re-offense. Patterson has shown no authority that limits the legislature from providing full access in all cases. Under ASORA, a sex offender's risk of re-offense is a matter of judgment for any member of the public who uses the Department's registry.

The legislature decided that the fact of an offender's conviction for a sex offense was sufficient reason to include that offender in the registry because of the potential for re-offense. It is not an irrational conclusion for the legislature to create the sex offender registry in response to the potential for recidivism that sex offenders have as a group. Because ASORA, as presently before us, does not require any administrative adjudication, we conclude that Patterson has not been deprived of procedural due process and that ASORA is not fundamentally unfair.

*ASORA does not violate substantive due process.*

Patterson next argues that ASORA is a violation of substantive due process because both the registration and the notification provisions unconstitutionally impinge on his asserted liberty interests: his right to travel, to obtain employment, and to personal safety. But Patterson has shown no adverse impact on any liberty interest. On its face, ASORA does not impinge on the right to travel or obtain employment and does not endanger personal safety. Patterson made no showing that ASORA has or is likely to affect these liberty interests.

 A statute violates substantive due process only if the statute has no reasonable relationship to a legitimate governmental purpose. [58] We do not decide whether the legislative action is wise, but only if it is based on a rational policy. "[I]f any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the oppo-

---

**57.** 142 N.J. 1, 662 A.2d 367 (1995).

**58.** *See Concerned Citizens v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974).

nents of the measure must disprove the factual basis for such a justification."[59]

This statute does not affect those liberty interests. Nor has Patterson disproved the legislature's announced policy to promote public safety. We agree with the State that the concern for public safety satisfies the requirement of a legitimate public policy and conclude that Patterson's substantive due process attack fails.

### ASORA does not violate equal protection.

Patterson also claims that ASORA violates equal protection. The equal protection clause of the Fourteenth Amendment guarantees that all individuals similarly situated will be treated similarly.[60] Under the federal equal protection clause, if a statute does not target a suspect class, the government need only prove that the classification is rationally related to a legitimate government interest.[61] Equal protection under article I, section 1 of the Alaska Constitution employs a sliding-scale analysis requiring a substantial relationship between legitimate legislative goals and the means chosen to achieve those goals.[62]

To pursue an equal protection claim, Patterson must show that he is a member of a group that is treated differently than another similarly situated group.[63] Patterson has not identified any differently treated yet similarly situated group or argued how ASORA creates a suspect classification. Accordingly, we conclude that Patterson's equal protection attack fails because he has not shown or argued that convicted sex offenders are treated differently than any similarly situated group.

### ASORA is not cruel and unusual punishment.

Patterson claims that ASORA imposes cruel and unusual punishment. Because we concluded above that ASORA's purpose is not punitive but regulatory, this argument fails.

### Patterson's claim regarding the privileges and immunities clause.

Patterson claims that ASORA violates the privileges and immunities clause. He only mentions this claim in the heading in one section of his brief. Therefore, we conclude that argument is not adequately briefed and do not address it.[64]

### ASORA is not overbroad.

Patterson also attacks ASORA claiming that it is overbroad because the program does not provide an individual analysis of an offender's actual potential for recidivism. Patterson's overbreadth attack does not identify any particular constitutionally protected conduct that ASORA allegedly prohibits that was not already raised in his other constitutional objections. Reducing Patterson's argument to its core, he claims that the legislature should have created a more complex scheme than it did, one that included a determination of each offender's potential for recidivism. Essentially, Patterson has restated the due process claims that we rejected above. We conclude that Patterson has not met his burden to show that ASORA is overbroad.

### ASORA is not a bill of attainder.

Next, Patterson claims that ASORA is a bill of attainder because it imposes a punishment without trial on the group that he is a member of—convicted sex offenders. This argument fails because the duty to register is not punishment.

---

59. *Id.*

60. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

61. *See id.* at 441–42, 105 S.Ct. 3249.

62. *See Alaska Pac. Assur. Co. v. Brown,* 687 P.2d 264, 269–70 (Alaska 1984).

63. *See Matanuska–Susitna Borough Sch. Dist. v. State,* 931 P.2d 391, 397 (Alaska 1997); *Rozkydal v. State,* 938 P.2d 1091, 1095–96 (Alaska App. 1997).

64. *See Zok v. State,* 903 P.2d 574, 576 n. 2 (Alaska 1995).

*ASORA does not violate Patterson's plea agreement.*

Finally, Patterson claims that applying ASORA to him violates his plea agreement with the State. The legislature had not enacted ASORA when Patterson entered his plea. Patterson obtained the direct benefit of his plea; he was convicted and sentenced for sexual abuse of a minor.

 Patterson maintains that the duty to register is now a direct consequence of sex offense conviction. In *Limani v. State*,[65] we discussed the differences between a "collateral consequence" and a "direct result" of a conviction. We adopted the convention that a collateral consequence is one that originates outside the court.[66] Patterson relies on two legislative changes to the Criminal Rules to support his argument that registration is a direct consequence. The first is the legislature's amendment to Criminal Rule 11 requiring the court to advise a defendant of the duty to register as a sex offender if that defendant is entering a plea of guilty or no contest to a sex offense charge. The second is the amendment to Criminal Rule 32 that requires that a judgment of conviction for a sex offense include a notification of the defendant's duty to register as a sex offender.

In *Peterson v. State*,[67] a decision also being issued today, we hold that the failure to warn a person of the ASORA registration requirement when a person enters a plea to a sex offense may establish manifest injustice for purposes of Criminal Rule 11(c)(3). But we reached this conclusion based on the legislature's apparent purpose when it amended Rule 11(c) to require this warning. The registration requirement remains a collateral consequence of the plea. ASORA imposes the duty to register, not the sentencing court.

Here, as in *Petersen*, we conclude that the duty to register is not a direct result of Patterson's plea agreement, but a collateral consequence. Therefore, we conclude that Patterson has not shown a violation of his plea agreement.

65. 880 P.2d 1065 (Alaska App.1994).

66. *See id.* at 1067.

*Conclusion*

The judgment is AFFIRMED.

67. —— P.2d ——, Opinion No. 1640, 1999 WL 521696 (Alaska App., July 23, 1999).