STATE of Alaska, Appellant,

v.

Dusan BOCESKI, Appellee.

No. A–7894.

Court of Appeals of Alaska.

Aug. 23, 2002.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Quinlan Steiner, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

COATS, Chief Judge.

North Slope Borough Sergeant Rayme Grubbs arrested Dusan Boceski after he overheard Boceski sell cocaine to L.H. The sale took place at L.H.'s residence in her arctic entryway. Sergeant Grubbs, with L.H.'s permission but without Boceski's knowledge, listened to the drug transaction from just inside the door of L.H.'s residence. Following his arrest, Boceski moved to suppress the evidence seized and statements he made, arguing that Sergeant Grubbs's surreptitious eavesdropping of the drug transaction violated his right to privacy under the Alaska Constitution. Superior Court Judge Michael I. Jeffery granted the motion. After

---

**11.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

granting the motion to suppress, Judge Jeffery granted Boceski's motion to dismiss the indictment. The state appeals Judge Jeffery's ruling. We reverse.

*Facts and proceedings*

On October 12, 2001, L.H. contacted the North Slope Borough Police Department about being a confidential informant for the police department. L.H. told Sergeant Grubbs that Boceski, a local drug dealer, sold cocaine throughout the community. Sergeant Grubbs discussed the case with other officers and devised a plan for L.H. to purchase drugs from Boceski at L.H.'s residence. According to the plan, L.H. would contact Boceski, have him come over, and sell her two grams of cocaine. When Boceski arrived, L.H. would tell him she only had enough money for one gram. Sergeant Grubbs would stand inside the darkened living room, located next to the arctic entryway, "with the door cracked open about an inch" and listen to the conversation. After Boceski gave her the cocaine, L.H. would say, "This doesn't look like a gram," and Sergeant Grubbs would enter the room and arrest Boceski.

Sergeant Grubbs conducted a pat-down search of L.H. before the buy and gave her $150.00 to purchase cocaine. Sergeant Grubbs also placed a cassette recorder in the arctic entryway and one in his shirt pocket. (Sergeant Grubbs had not obtained a *Glass* warrant prior to recording the conversation.)

Before Sergeant Grubbs heard Boceski arrive, he went into the living room and turned off the lights. He told L.H.'s brother, who was also in the living room, to be quiet and not to interrupt. Sergeant Grubbs did not use a sensory-enhancing listening device to listen to the conversation, but he did start the tape recorder. Sergeant Grubbs heard a knock on the door and then heard Boceski's voice. According to Sergeant Grubbs, he could hear little of what was said. He did, however, hear L.H. say something about her parka and then say, "This doesn't look like a gram." At that point, he entered the entryway, recognized Boceski, and saw him throw

money on the freezer. He also saw L.H. throw a small clear plastic bag containing a white powdery substance on to the freezer.

Sergeant Grubbs arrested and searched Boceski. During the search, he found nine bindles of cocaine on Boceski. After he was warned of his *Miranda* rights, Boceski made several incriminating statements. Based on his observations, the evidence seized from Boceski, and L.H.'s and Boceski's statements, Sergeant Grubbs obtained a search warrant for Boceski's residence. There he seized a small amount of cocaine and various drug paraphernalia.

The state indicted Boceski on one count of misconduct involving a controlled substance in the third degree[1] for selling cocaine. Boceski moved to suppress Sergeant Grubbs's observations, the audiotape recording, and all of the evidence seized following Boceski's arrest, including Boceski's *Mirandized* statements.

Judge Jeffery found that under *State v. Glass*,[2] Boceski had a reasonable expectation that his conversation with L.H. would not be recorded and thus that Sergeant Grubbs's failure to obtain a *Glass* warrant prior to recording the conversation between L.H. and Boceski violated Boceski's right to privacy under the Alaska Constitution. The state does not dispute this ruling.

However, Judge Jeffery also ruled that Sergeant Grubbs violated Boceski's right to privacy by evesdropping on Boceski's conversation with L.H. Judge Jeffery therefore suppressed Sergeant Grubbs's observations in the entryway and also prohibited Sergeant Grubbs from testifying about the conversation. He further ruled that the evidence obtained from Boceski during his arrest and during the search of his residence was illegal fruit of Sergeant Grubbs's unlawful eavesdropping and suppressed the evidence. Although Judge Jeffery acknowledged that L.H.'s testimony about the transaction was admissible, he ruled that the inadmissible evidence appreciably affected the grand jury's indictment and granted Boceski's motion to dismiss. This appeal followed.

---

**1.** AS 11.71.030(a)(1).

**2.** 583 P.2d 872 (Alaska 1978).

*Boceski had no reasonable expectation of privacy in a conversation overheard by an officer who was lawfully present in the adjacent room*

The two-prong test discussed in *State v. Glass*[3] defines the scope of Alaska's right to be free from unreasonable governmental intrusion.[4] To establish an unwarranted invasion of individual privacy under the Alaska Constitution, a person must first show that he or she exhibited an actual (subjective) expectation of privacy in the activity being monitored by the government.[5] This is a question of fact.[6] Second, a person must show that his or her expectation of privacy is one that society is willing to recognize as reasonable.[7] This is a question of law.[8]

Judge Jeffery found that Boceski exhibited an actual expectation of privacy. This finding is supported by the record and is not clearly erroneous. However, this court independently decides whether Boceski's expectation of privacy from eavesdropping was reasonable.[9]

Judge Jeffery relied heavily on *State v. Glass* to reach his conclusion to suppress the evidence seized from Boceski. In *Glass*, the Alaska Supreme Court held that "one who engages in a private conversation is ... entitled to assume that his words will not be broadcast or recorded absent his consent or a warrant."[10] *Glass* involved an informant who wore a radio transmitting device intended to record the conversation of the defendant and the informant during a drug purchase.[11] In holding that the police must first obtain a warrant before surreptitiously recording private conversations between informants and defendants, the court pointed out it was the *electronic* monitoring or recording that offended the notions of privacy in Alaska, not eavesdropping.[12] The court found that when a person engages in a private conversation with another, the speaker understands that his words may be repeated by the listener, but he does not foresee that his words will be simultaneously recorded or broadcast without his prior consent or a warrant.[13] To hold otherwise, according to the court, would result in a dramatic chilling effect on speech.[14]

This court discussed the *Glass* rationale in *State v. Page*.[15] This court noted that the underlying concern of *Glass* was not only the possible effects surreptitious recording has on speech, but also on society's concern that the government may monitor or record a private citizen's words or conduct by technological assistance without his or her knowledge.[16] In *Page*, the police hid a video camera in the apartment of an informant and recorded the drug transaction without the defendant's knowledge.[17] The police only videotaped the interaction between the informant and the defendant; they made sure not to record the audio portion of the conversation.[18] This court held that if a person engages in a private conversation and the person has a reasonable right to visual privacy, Alaska's right to privacy requires "the police ... [to] secure a warrant before surrepti-

3. 583 P.2d 872 (Alaska 1978) (adopting Justice Harlan's concurrence in *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967)).

4. *Id.* at 875.

5. *See id.; State v. Page*, 911 P.2d 513, 515 (Alaska App.1996).

6. *See Page*, 911 P.2d at 515.

7. *See Glass*, 583 P.2d at 875; *Page*, 911 P.2d at 515.

8. *See Page*, 911 P.2d at 515–16.

9. *See id.*

10. *Glass*, 583 P.2d at 875.

11. *Id.* at 874.

12. *Id.* at 877–78, 880.

13. *Id.* at 877.

14. *Id.*

15. 911 P.2d 513 (Alaska App.1996).

16. *Id.* at 516–17.

17. *Id.* at 515.

18. *Id.*

tiously videotaping the conversation, even if they turn the sound off." [19]

Courts have generally concluded that if officers overhear conversations from places where they have a right to be; use only their unaided, natural senses; and are in a place where the speaker would anticipate someone might be, then the speaker has a diminished expectation of privacy that is not protected by the Fourth Amendment.[20] Professor La-Fave notes, "At least when the officer only employs his natural senses, the prevailing rule is that such uses of the senses 'made from a place where a police officer has a right to be do not amount to a search in the constitutional sense.' "[21]

Boceski has stated no compelling reason why we should depart from this general rule in applying the Alaska Constitution. Moreover, we are aware of only one jurisdiction, Massachusetts, that requires officers to secure a warrant before surreptitiously recording an informant's conversation with a defendant; yet even Massachusetts has held that a person does not have a reasonable expectation of privacy when an officer overhears a conversation, using only his natural senses, from a place were he has a lawful right to be.[22]

■ It is uncontested that Sergeant Grubbs was lawfully present in L.H.'s home, and Judge Jeffery so found. L.H. invited Sergeant Grubbs into her home and stood behind the door with her permission. Although Boceski may have believed that his conversation with L.H. was private, he ran the risk that someone might be present in L.H.'s living room and in a position to overhear this conversation. In fact, L.H.'s brother was in the living room with Sergeant Grubbs when the drug transaction took place. We hold that Boceski had no reasonable expectation of privacy against eavesdropping by someone lawfully present in L.H.'s home. Accordingly, Sergeant Grubbs's eavesdropping of Boceski's conversation did not violate Boceski's constitutional right to privacy. Judge Jeffery erred in suppressing any evidence that Sergeant Grubbs obtained from overhearing Boceski's conversation from behind the door.

The state contends that if we conclude that Judge Jeffery erred in suppressing evidence based upon Sergeant Grubbs's surreptitiously listening to Boceski's conversation with L.H., we should remand the case to allow Judge Jeffery to determine what evidence should be suppressed based upon the illegal tape recording itself. The state also argues that we should remand the case to Judge Jeffery to allow him to redetermine whether suppression of the tape recording and its fruits would require dismissal of the indictment. Boceski does not oppose this position. We accordingly reverse Judge Jeffery's order suppressing evidence based upon Sergeant Grubbs surreptitiously overhearing the drug transaction. We remand the case to allow the superior court to determine what evidence should be suppressed based upon Sergeant Grubbs's illegal tape recording of

**19.** *Id.*

**20.** *See e.g., United States v. Mankani,* 738 F.2d 538, 542 (2nd Cir.1984); *United States v. Hessling,* 845 F.2d 617, 619 (6th Cir.1988); *United States v. Agapito,* 620 F.2d 324, 329–30 (2nd Cir.1980); *United States v. Jackson,* 588 F.2d 1046, 1051–52 (5th Cir.1979); *United States v. Fisch,* 474 F.2d 1071, 1077–79 (9th Cir.1973); *People v. Hart,* 787 P.2d 186, 187–88 (Colo.App. 1989); *State v. Benton,* 206 Conn. 90, 536 A.2d 572, 575 (1988) ("Conversations carried on in any type of residence ... in a tone audible to the unaided ear of a person located in a place where that person has a right to be, and where a person can be expected to be, are conversations knowingly exposed to the public.").

**21.** 1 Wayne R. LaFave, *Search and Seizure* § 2.3(c), at 480 (3rd ed.1996) (footnote and citation omitted).

**22.** *See also Commonwealth v. Blood,* 400 Mass. 61, 507 N.E.2d 1029, 1034 (1987) (holding that warrantless electronic surveillance of conversations with the consent of just one party violates the right to be free from unreasonable searches and seizures under the Massachusetts Constitution); *Commonwealth v. Panetti,* 406 Mass. 230, 547 N.E.2d 46, 47 (1989) ("a person would have no justified expectation of privacy in conversations that can be heard by the unaided ear of an eavesdropper lawfully in a contiguous apartment"); *Commonwealth v. Dinnall,* 366 Mass. 165, 314 N.E.2d 903, 904–05 (1974).

the drug transaction and to re-evaluate whether the indictment should be dismissed.

REVERSED and REMANDED.